[Nos. 61690-6; 62059-8. En Banc. July 20, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES McFARLAND, *Petitioner*.

THE STATE OF WASHINGTON, *Petitioner*, v. MICHAEL JOSEPH FISHER, *Respondent*.

*Joe Quaintance* and *James McFarland*, pro se, for petitioner McFarland.

*Jessica Ryan* and *Rita J. Griffith of Washington Appellate Defender Association*, for petitioner McFarland and respondent Fisher (counsel in consolidated case).

*Norm Maleng, King County Prosecutor, Lee Yates, Deputy, John Landenburg, Pierce County Prosecutor*, and *Thomas C. Roberts, Deputy*, for state.

*Richard Cowan* on behalf of *Washington Defender Association*, amicus curiae.

JOHNSON, J. — We accepted and consolidated these cases to consider whether a defendant should be allowed to challenge a warrantless arrest for the first time on appeal where the defendant alleges failure to challenge the arrest at trial constitutes ineffective assistance of counsel.

James McFarland appeals his convictions for first-degree burglary, first-degree kidnapping, first-degree attempted robbery, and as a felon in possession of a short firearm. Michael Fisher appeals his convictions for delivery of a controlled substance and possession with intent to deliver a controlled substance, both with school

zone enhancements. Each Defendant challenges the legality of his arrest and argues the trial court should have suppressed evidence seized following the arrest. McFarland also asserts certain inculpatory statements should have been suppressed. Each Defendant raises his challenge for the first time on appeal, and each challenge is raised together with a claim of ineffective assistance of counsel for failure to move for suppression at trial.

### FACTS

### *State v. McFarland*

At about 10:30 p.m., April 23, 1990, Alan Rogers heard his dogs barking, indicating to him that someone was at his door. When he opened the door, he saw two masked men holding sawed-off shotguns. One of the masked men was of average size, while the other was somewhat larger. The men forced their way in, ordered Rogers to lie on the floor, and brought the other two family members into the living room. Alan Roger's wife, Suzanne, was forced to lie on the floor at the feet of her mother, Doris Logan.

The men demanded money of Alan Rogers. When Rogers told them he had none, the smaller man kicked and hit him several times, finally taking him to the bedroom where the man again demanded money. Rogers testified he was told he had four seconds to cooperate or the man would kill him; the man then began a four-second countdown.

Rogers kept a bucket beside the bed, containing change, personal belongings, and a.22 caliber Derringer-type pistol. He picked up the bucket and told the man it contained money. Rogers then got the pistol, grabbed the man's shotgun, spun around behind him, and shot him repeatedly with the Derringer until the man ceased struggling and fell on the bed. The man died at the scene and was later identified as Patrick Flick.

Believing the shots had killed her husband, Suzanne jumped up and ran out of the house, screaming for help. Rogers went into the hallway intending to shoot the larger

masked man but, finding his Derringer empty, retreated. The man fled, firing the shotgun as he left the house. He climbed over a neighbor's fence and ran down an alley, still carrying the sawed-off shotgun when witnesses lost sight of him. At no time did any victim or witness see the man's face.

The first 911 emergency call from Rogers was received at 10:42 p.m. on April 23, 1990, saying shots had been fired, and the first police officer arrived at 10:45 p.m. Witnesses described the larger masked man as 5'11" to 6'2" tall and 180 to 220 pounds, and wearing dark clothing. Rogers testified the man had a mustache visible through his ski mask and sounded like an older person, probably in his late 40's.

The next day police put James McFarland's house under surveillance. When he left the house and drove away in his car, McFarland was stopped and arrested. The police had no arrest warrant, but they believed McFarland to be the larger masked man involved in the attempted robbery at the Rogers' residence. At the time of the arrest, the police investigation had developed the following information linking McFarland with the crime: (1) he was 50 years old, 6'0" tall, and weighed about 220 pounds, which was consistent with the witnesses' descriptions; (2) a police dog tracked the scent of the larger masked man to the end of the alley where he appeared to have gotten into a car that leaked motor oil, and McFarland drove a car that leaked oil; and (3) McFarland had been seen with Flick shortly before the attempted robbery.

McFarland was read his rights and questioned following his arrest. Responding to questioning, he stated Flick had borrowed his car the previous evening while McFarland was attending a class at Bates Vocational School. Flick returned with the car around 9:40 p.m., and they went to Flick's parents' residence, drank a few beers, and examined two shotguns produced by Flick. Flick then injected himself with heroin and made a telephone call. There was no evidence at trial suggesting McFarland injected or

ingested any heroin. The two men returned to the car, Flick carrying the two shotguns into the car with him. McFarland said he did not ask Flick what he intended to do with the weapons. McFarland and Flick then drove to the parking lot of the 38th Street Pub Tavern, where they met an unidentified, heavy-set white man with whom Flick left, taking the shotguns with him. McFarland then went home, arriving there sometime between 10:30 p.m. and 11:30 p.m.[1]

After McFarland's arrest and questioning, the police investigation developed additional information linking him to the crime: (1) McFarland's blood type and blood enzyme analysis matched a blood spot on a stocking mask recovered near the crime scene, a match shared by .4 percent of Caucasians and .2 percent of African-Americans; and (2) a court-ordered examination of McFarland by Dr. Harold Boyd revealed a head wound consistent with the location of the blood spot on the stocking mask and old enough that McFarland likely had the wound on the night of the assaults on the Rogerses.

Trial counsel moved to suppress certain evidence and challenged the State's efforts to obtain certain physical evidence, but counsel did not challenge the warrantless arrest or move to suppress any evidence based on an illegal arrest. McFarland was convicted of the charged crimes. On appeal, McFarland's new counsel alleged prosecutorial misconduct, double jeopardy, and insufficient evidence, but he did not challenge the legality of McFarland's arrest. McFarland filed a pro se brief in which he claimed ineffective assistance of trial counsel and challenged the legality of his arrest. McFarland's pro se brief to the Court of Appeals was the first time his warrantless arrest was challenged.

The Court of Appeals, Division Two, affirmed McFarland's conviction. *State v. McFarland*, 73 Wn. App. 57, 867

---

[1] At trial, McFarland's mother testified he arrived home between 10:40 p.m. and 10:50 p.m., which she remembered because after his arrival she had time to wash her hair before her favorite television show began at 11 p.m.

P.2d 660 (1994). The court held his failure to object to the warrantless arrest at trial waived his Fourth Amendment right to challenge the admission of evidence and inculpatory statements made following his arrest. The court held this waiver was per se deficient conduct by counsel because it was neither a tactical decision nor sensible trial strategy. The court concluded, however, that it could not determine whether McFarland was prejudiced by this waiver, because it could not determine from the record whether the trial court would have granted a motion to suppress the evidence and statements obtained after McFarland's arrest. Because this determination involved matters outside the record, the Court of Appeals denied relief and held McFarland could only challenge his warrantless arrest and the evidence obtained following that arrest in a separate personal restraint petition under RAP 16.3.

### State v. Fisher

On March 14, 1991, Seattle Police Officer Michael Alphin and his partner, Officer Wright, were working undercover, posing as buyers of illegal narcotics. Three other officers comprised the arrest team, which was in radio contact with Alphin and Wright. While driving around the Columbia City area of Seattle, Alphin came in contact with Larry Williams, who, in response to Alphin's offer to buy drugs, led Alphin and Wright to a corner where Alonzo King was standing. King, in turn, led Alphin and Williams to an apartment where they could each buy $20 worth of cocaine.

Officer Alphin testified the door to the apartment was wide open. He entered the apartment and saw two persons lying on a couch which faced the door. The two persons were later identified as Michael Fisher and Stonya Connor. Fisher and Connor sat up and leaned forward when Alphin, Williams, and King entered. Following some incidental conversation, Fisher told Connor to go ahead and sell to them. Connor opened her hand to reveal two small rocks, appearing to Alphin to be rock cocaine. Al-

phin took one of the rocks, inspected it, and gave Connor a marked $20 bill. Williams looked at the other rock, but declined to buy it because it was too small.

As Alphin turned to leave, he asked Fisher if he could come back later to make another purchase. Fisher responded yes, there would be more drugs later. On cross-examination, Alphin admitted this final exchange was not included in his first report but in a second report, prepared only after communication with the prosecuting attorney.

Officer Alphin returned to his vehicle and told Officer Wright he had made a "good buy". Wright radioed the arrest team to move in for the arrest. Alphin and Wright then left the area.

The arrest team was comprised of officers Bruce, Christophersen, and Waltz. Christophersen testified that, following Officer Wright's radioed instructions, they went to the apartment. The door was open. Christophersen looked in and saw two persons matching the radioed description of Fisher and Connor. The three officers immediately entered the apartment with guns drawn, yelled "police" and "you are under arrest", then arrested and handcuffed Fisher and Connor. Approximately 30 seconds elapsed from the radio signal to the arrest.

After Fisher and Connor were read their rights and said they understood them, Officer Bruce asked where the buy money was. Connor told him it was in her brassiere. Fisher and Connor then were taken to the south precinct of the Seattle Police Department and placed in holding cells. Officer Tammy Baldwin searched Connor, finding in her brassiere four $20 bills and a 35mm film canister containing what appeared to be rock cocaine. One of the $20 bills was the marked bill used by Officer Alphin to purchase cocaine from Fisher and Connor. The rock purchased from Connor by Officer Alphin and the rock obtained in Officer Baldwin's search of Connor both were tested and determined to be cocaine.

Fisher, Connor, Williams, and King each were charged

with delivery of a controlled substance, and Fisher and Connor were charged with possession with intent to deliver a controlled substance. RCW 69.50.401(a)(1)(i). Because the apartment was located 540 feet from Whitman Elementary School, a school zone enhancement allegation was added for each count under RCW 69.50.435.

Fisher's first trial ended in a mistrial, with the jury unable to reach a unanimous verdict. In Fisher's second trial, the jury returned guilty verdicts on both counts with the school zone enhancement allegations. He was sentenced to two 65-month, standard range concurrent terms.

Through different counsel on appeal, Fisher challenged his warrantless arrest and claimed ineffective assistance of trial counsel for failure to challenge the arrest at trial.

The Court of Appeals, Division One, affirmed Fisher's conviction. *State v. Fisher*, 74 Wn. App. 804, 874 P.2d 1381 (1994). The court held his failure to seek suppression of evidence obtained following his warrantless arrest waived his right to have it suppressed under article I, section 7 of the Washington Constitution. As in *McFarland*, the Court of Appeals held counsel's representation was deficient per se, but concluded it could not determine from the record on appeal whether a motion to suppress would have been granted if made. Unlike Division Two in *McFarland*, however, Division One remanded for a suppression hearing.

## ISSUE

May a defendant challenge a warrantless arrest for the first time on appeal, in the context of an ineffective assistance of counsel claim? If so, do either of these challenges merit relief?

## ANALYSIS

### Warrantless Arrest

McFarland and Fisher challenge their warrantless arrests for the first time on appeal. As a general rule, ap-

pellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a). However, a claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right". RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988); *State v. Lynn*, 67 Wn. App. 339, 342, 835 P.2d 251 (1992). As we recognized in *Scott*, constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *Scott*, 110 Wn.2d at 686-87. On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts". *Lynn*, 67 Wn. App. at 344.

As an exception to the general rule, therefore, RAP 2.5(a)(3) is not intended to afford criminal defendants a means for obtaining new trials whenever they can identify some constitutional issue not raised before the trial court. Rather, the asserted error must be "manifest"—*i.e.*, it must be "truly of constitutional magnitude". *Scott*, 110 Wn.2d at 688. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error "manifest", allowing appellate review. *Scott*, 110 Wn.2d at 688; *Lynn*, 67 Wn. App. at 346. If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest. *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

McFarland and Fisher ask this court to consider alleged constitutional errors arising from trial counsels' failure to make a motion to suppress evidence obtained following a warrantless arrest. Each Defendant, to show he was actually prejudiced by counsel's failure to move for

suppression, must show the trial court likely would have granted the motion if made. It is not enough that the Defendant allege prejudice—actual prejudice must appear in the record. In each case, because no motion to suppress was made, the record does not indicate whether the trial court would have granted the motion.[2] Without an affirmative showing of actual prejudice, the asserted error is not "manifest" and thus is not reviewable under RAP 2.5(a)(3).

## Ineffective Assistance of Counsel

■■ To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all

---

[2]Because no motion to suppress was made, there exists no record of the trial court's determination of the issue in either case. We recognize the predicament this causes for McFarland and Fisher: each Defendant must show the motion likely would have been granted based on the record in the trial court, yet the record has not been developed on this matter because the motion was not made. Even a de novo review of the records (which would relieve each Defendant of his burden to show the alleged error was manifest) does not reveal actual prejudice accruing to either Defendant from the asserted constitutional error.

In *McFarland,* the record shows police officers had substantial information linking McFarland to the crime, arguably sufficient to support probable cause. If the officers had probable cause to arrest McFarland, his arrest was not illegal and there is no reason why his trial counsel should have raised a motion to suppress based on McFarland's warrantless arrest. Such a motion properly would have been denied. Even if police officers lacked probable cause to arrest McFarland, it is not clear from the record that trial counsel's failure to move for suppression of post-arrest statements and evidence resulted in actual prejudice to McFarland. Police had already received information that he was with Flick the night of the attempted robbery, and physical evidence taken from McFarland following his arrest was obtained by subsequent court orders, based upon an independent showing of probable cause.

In *Fisher,* the Defendant does not argue the police lacked probable cause; rather, he argues there were no exigent circumstances justifying a warrantless arrest. The record reveals the likely existence of several of the exigencies listed in *State v. Terrovona,* 105 Wn.2d 632, 644, 716 P.2d 295 (1986), *cert. denied sub nom. Terrovona v. Kincheloe,* 499 U.S. 979 (1991), and *State v. Counts,* 99 Wn.2d 54, 60, 659 P.2d 1087 (1983). The existence of these exigencies suggests a motion to suppress would have been denied if made. Because neither record shows actual prejudice, we find no "manifest error affecting a constitutional right" which would allow review of the warrantless arrest under RAP 2.5(a)(3).

the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). Competency of counsel is determined based upon the entire record below. *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972) (citing *State v. Gilmore*, 76 Wn.2d 293, 456 P.2d 344 (1969)).

Deficient Representation

 Courts engage in a strong presumption counsel's representation was effective. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995); *Thomas*, 109 Wn.2d at 226. Where, as here, the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record. *State v. Crane*, 116 Wn.2d 315, 335, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991); *State v. Blight*, 89 Wn.2d 38, 45-46, 569 P.2d 1129 (1977). *Accord State v. Stockton*, 97 Wn.2d 528, 530, 647 P.2d 21 (1982) (matters referred to in the brief but not included in the record cannot be considered on appeal). The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below. If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal. See Washington State Bar Ass'n, *Appellate Practice Desk Book* § 32.2(3)(c), at 32-6 (2d ed. 1993) (citing *State v. Byrd*, 30 Wn. App. 794, 800, 638 P.2d 601 (1981)). Because neither Defendant here filed a personal restraint petition, the issue in these cases must be decided based on the trial records identified on appeal.

In both *McFarland* and *Fisher*, the Court of Appeals found no legitimate tactical reason for counsel's failure to move for suppression of evidence obtained following the

warrantless arrest. Relying on *State v. Tarica*, 59 Wn. App. 368, 798 P.2d 296 (1990), the court in each case held that failure to move for suppression constituted per se deficient representation, thereby satisfying the first prong of the *Strickland* test. *McFarland*, 73 Wn. App. at 72-73; *Fisher*, 74 Wn. App. at 810-11.

In *Tarica*, the defendant challenged for the first time on appeal a search and seizure conducted during an investigatory stop. The challenge was brought together with an ineffective assistance of counsel claim. The *Tarica* court held it is per se deficient representation for counsel not to move for suppression in the trial court "anytime there may be a question as to the validity of a search and subsequent seizure". *Tarica*, 59 Wn. App. at 374. This is not the correct analysis.

■■ The *McFarland* and *Fisher* courts, in following *Tarica*, stood the presumption of effective representation on its head by presuming deficient representation absent contrary evidence in the record. We will not presume a CrR 3.6 hearing is required in every case in which there is a question as to the validity of a search and seizure, so that failure to move for a suppression hearing in such cases is per se deficient representation. Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel. There may be legitimate strategic or tactical reasons why a suppression hearing is not sought at trial. *See State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994) (defense counsel's legitimate trial strategy or tactics cannot be the basis for a claim of ineffective assistance of counsel); *State v. Mak*, 105 Wn.2d 692, 731, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *sentence vacated on writ of habeas corpus sub nom. Mak v. Blodgett*, 754 F. Supp. 1490 (W.D. Wash. 1991), *aff'd*, 970 F.2d 614 (9th Cir. 1992), *cert. denied*, 122 L. Ed. 2d 742 (1993). The presumption of effective representation can be overcome only by a showing of deficient representation based on the record established in the proceedings below.

■ Insofar as *Tarica* holds that failure to move for suppression of evidence is per se deficient representation under the first prong of the *Strickland* test, it was wrongly decided. The Court of Appeals in *McFarland* and *Fisher* erred in relying on that holding of *Tarica*. Rather, the burden is on the defendant to show from the record a sufficient basis to rebut the "strong presumption" counsel's representation was effective. *Thomas*, 109 Wn.2d at 226. Neither record here provides such a basis. We find neither McFarland nor Fisher has shown deficient representation by trial counsel.[3] Their claims of ineffective assistance of counsel therefore fail on the first prong of the *Strickland* test.

Prejudice

■ The defendant also bears the burden of showing, based on the record developed in the trial court, that the result of the proceeding would have been different but for counsel's deficient representation. *Thomas*, 109 Wn.2d at 225-26. As stated earlier, neither McFarland nor Fisher has made such a showing.[4] Accordingly, their ineffective assistance of counsel claims fail on the second prong of the *Strickland* test.

In both cases, the Court of Appeals found the record inadequate to determine whether the defendant was preju-

---

[3]To the contrary, McFarland's trial counsel unsuccessfully moved to suppress the physical evidence on the ground there was not probable cause to suspect McFarland committed the crime, as well as on other grounds. This fact undermines McFarland's claim of deficient representation, suggesting counsel made a reasoned decision not to move for suppression based on the warrantless arrest.

Fisher's trial counsel apparently considered making a motion to suppress based on the warrantless arrest, but chose not to do so. Whether this decision reflects a legitimate trial strategy or tactic cannot be determined from the record, but the existence of the exigencies mentioned in note 2 provides a plausible reason for trial counsel to have decided not to move for suppression.

[4]Both McFarland and Fisher assert prejudice flowing from counsel's failure to move for suppression of evidence obtained following the warrantless arrest. In each case, the record reveals a substantial basis for denying a motion to suppress. See note 2. Absent an affirmative showing that the motion probably would have been granted, there is no showing of actual prejudice.

diced by counsel's failure to move for suppression. We agree. As to the issues presented here, that finding is determinative, and remanding for expansion of the record is not an appropriate remedy. If either Fisher or McFarland wishes a reviewing court to consider matters outside the record, a personal restraint petition is the appropriate vehicle for bringing those matters before the court.[5]

## CONCLUSION

Neither McFarland nor Fisher has demonstrated actual prejudice resulting from counsel's failure to move for suppression of evidence obtained following a warrantless arrest. Without a showing that the defendant's rights were actually affected by the alleged constitutional error, the alleged error is not "manifest" under RAP 2.5(a)(3), and the claimed error may not be raised for the first time on appeal.

Neither McFarland nor Fisher has demonstrated ineffective assistance of counsel under *Strickland* and *Thomas*. Neither Defendant has overcome the strong presumption of effective representation of counsel sufficiently to satisfy the first prong of the *Strickland* test. Neither Defendant has shown actual prejudice sufficient to satisfy the second prong of the *Strickland* test.

*State v. Tarica, supra,* is overruled insofar as that case holds failure to move for suppression of evidence is per se deficient representation under the first prong of the *Strickland* test. To the extent the *McFarland* and *Fisher* courts relied on that holding of *Tarica,* their reasoning is vacated.

---

[5]There is nothing intrinsic in a claim of ineffective assistance of counsel that requires it to be considered only in a collateral proceeding such as a personal restraint petition. We regularly consider such claims on direct appeal. *See, e.g., State v. Brett,* 126 Wn.2d 136, 892 P.2d 29 (1995); *State v. Garrett,* 124 Wn.2d 504, 881 P.2d 185 (1994); *State v. Benn,* 120 Wn.2d 631, 845 P.2d 289, *cert. denied,* 126 L. Ed. 2d 331 (1993); *State v. Davis,* 119 Wn.2d 657, 835 P.2d 1039 (1992); *State v. Lord,* 117 Wn.2d 829, 822 P.2d 177 (1991), *cert. denied,* 121 L. Ed. 2d 112 (1992); *State v. Bowerman,* 115 Wn.2d 794, 802 P.2d 116 (1990). We do not hold that such a claim must be brought in a personal restraint petition; rather, we hold only that a personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record.

We vacate the Court of Appeals order remanding for a suppression hearing in *Fisher* and affirm the convictions of both McFarland and Fisher. Each Defendant may raise any appropriate constitutional claim in a subsequent personal restraint petition.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN, and TALMADGE, JJ., concur.

Reconsideration denied September 8, 1995.