COURT OF APPEALS DIV 1
2013 APR 29 AM 9: 43


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 69897-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| A.C.M. (D.O.B. 10/6/93), | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |

SPEARMAN, A.C.J. — A.C.M. (D.O.B.: 10/6/93) was adjudicated guilty of burglary in the first degree, attempted robbery in the first degree, and assault in the second degree after he and two co-respondents formed a plan to go to a classmate's house, subdue him with a baseball bat, and take his marijuana and money. In carrying out the plan, A.C.M. hit the classmate's father with the bat. A.C.M.'s main claim on appeal is that the court erroneously refused to apply the "150 percent rule" under RCW 13.40.180(1)(a) to limit the terms imposed for the attempted robbery and the assault. We hold the court did not err because the offenses were not committed through a single act or through an act that constituted one of the offenses and was an element of the other. Furthermore, A.C.M. cannot show prejudice for his ineffective assistance of counsel claim,

which is based on counsel's allegedly unclear presentation of the 150 percent rule. We affirm.

## FACTS

On June 17, 2011, J.C. and A.C.M. slept over at their friend D.S.'s house. All three were juveniles. J.C. brought a baseball bat. That evening, the three young men formed a plan to steal marijuana and cash from their classmate J.S. D.S. and A.C.M. believed J.S. had a large quantity of marijuana and cash on hand because they had purchased marijuana from him on multiple occasions. The plan was for the three of them to go to J.S.'s home the next morning and surprise him. One or two of them would subdue J.S. with the baseball bat, while the third would get marijuana and money from J.S.'s room. All three planned to wear masks so that J.S. would not recognize them. They obtained two ski masks and made a third mask by cutting holes into a beanie.

On the morning of June 18, D.S. sent a text message to J.S., asking to buy marijuana. J.S. told D.S. to come by in an hour and said no one would be home. D.S. did not inform J.S. that A.C.M. and J.C. would be coming with him. D.S., J.C., and A.C.M. arrived at J.S's home approximately 20 minutes later and put on their masks. J.S.'s home was a split-level structure. The front door opened onto a landing, from which one set of stairs led upstairs to the living room and other areas and another set led downstairs to a recreational area and the garage. D.S., J.C., and A.C.M. crawled under the garage door, which was open several feet. J.C. was holding the same baseball bat that he had brought to D.S.'s house the night before. They entered the home through a door in the garage and then

2

discussed how to proceed. They decided J.C. would go outside and ring the doorbell to lure J.S. to the front door. D.S. and A.C.M. would approach J.S. from behind and subdue him. Meanwhile, J.C. would go to J.S.'s room for the marijuana and money. J.C. gave the bat to A.C.M. before going outside to ring the doorbell.

Unbeknownst to the three youths, J.S.'s family—including his parents and brother—was home. When J.C. rang the doorbell, it was answered by J.S.'s father, Earl Smiley, who was putting on his shoes to go to the store. J.C. fled the scene. A.C.M. came upstairs from the garage and struck Smiley, whose back was to A.C.M., on the head with the baseball bat. Smiley chased after A.C.M. and the two went downstairs to the lower level, where D.S. was standing. Smiley and A.C.M. fought, with A.C.M. striking Smiley in the ribs and shoulder with the bat. A.C.M. broke free, fled up the stairs and left through the front door, abandoning the bat inside the house.

While A.C.M. and Smiley were fighting, J.S. came downstairs and began fighting with D.S. J.S. placed D.S. in a choke hold and pulled off D.S.'s ski mask.[1] After he recognized D.S., an argument ensued. J.S. tried to keep D.S. in the room but D.S. was able to get free. D.S. fled up the stairs and out the front door.

D.S. ran toward his home and hid in bushes along the way. While hiding, D.S. saw his mother drive by, so he called her and asked her to pick him up. He had blood on him and minor injuries. He eventually admitted to her that he had

---

[1] (Verbatim Recording of Proceedings (VRP) – fact-finding proceedings of September 13-16 and October 6, 2011; 1VRP - June 22, 2011; 2VRP - July 6, 2011; 3VRP - July 25, 2011; 4VRP - August 30, 2011.

been involved in a burglary and that A.C.M. had hit someone on the head with a baseball bat. D.S. was soon arrested at his home. He confessed his involvement with the incidents at the Smiley residence and told police officers that A.C.M. and J.C. had also been involved.

Deputy Michael McGinnis responded to the Smiley residence. He first came into contact with Smiley and his wife outside of their home. Smiley was hunched over and incoherent. He had blood on his head and had suffered a fracture of his right shoulder. The injury to his head required 11 stitches. At the time of trial, he continued to experience soreness and pain in his arm, head, and upper body.

The State charged A.C.M. by amended information with burglary in the first degree, attempted robbery in the first degree with alternative means (armed with/displaying a deadly weapon or inflicting bodily injury), and assault in the second degree with alternative means (assault with a deadly weapon or recklessly inflicting substantial bodily harm). After a bench trial, the juvenile court adjudicated A.C.M. guilty of all charges. The court found that the attempted robbery and the assault were each committed under both alternative means.

At the disposition hearing, the parties discussed the "merger issue." VRP (10/6/11) at 393. Defense counsel stated, "[T]he merger issue requires the Court to determine whether or not the assault is part of the same criminal conduct as the [attempted] robbery." Id. Counsel argued that the assault was used to elevate the degree of the attempted robbery and, as a result, the two crimes merged. Counsel also cited RCW 13.40.180, arguing that where a juvenile is convicted of

4

multiple crimes that encompass the same criminal conduct, the sentence could be no more than 150 percent of the term for the most serious offense.

The prosecutor agreed that the question was whether the attempted robbery and assault were "the same course of criminal conduct." VRP (10/6/11) at 395. He argued that the charges did not merge because the robbery was charged as an attempt and could have been committed by an act such as leaving D.S.'s house with the masks and bat and the plan to commit the robbery or going into the garage with the bat. He argued that the two crimes were not the same course of criminal conduct because the attempted robbery was completed before the assault occurred and Smiley was the victim of the assault but J.S. was the victim of the attempted robbery. Finally, the prosecutor cited the burglary anti-merger statute and argued that even if the court were to find the same course of conduct, the anti-merger statute would permit separate punishments. Defense counsel disputed that the attempted robbery was completed prior to the assault and argued that Smiley was the victim of attempted robbery as well, because it was his house.

The juvenile court concluded that the attempted robbery in the first degree and the assault in the second degree were not the same criminal conduct.[2] Applying the "300 percent rule" under RCW 13.40.180(1)(b), the court imposed a disposition of 45-104 weeks (15-36 weeks per count running consecutively, with the total sentence capped at 104 weeks). A.C.M. filed a timely notice of appeal.

---

[2] In its oral ruling, the court stated that the assault was not the same criminal conduct as the attempted robbery because the attempted robbery took place as soon as the youths were inside the house with the baseball bat but the assault took place later.

## DISCUSSION

### Disposition under RCW 13.40.180

We review a trial court's ruling on "same criminal conduct" for abuse of discretion or misapplication of law. State v. Maxfield, 125 Wn.2d 378, 402, 886 P.2d 123 (1994). The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

RCW 13.40.180(1) provides:

> (1) Where a disposition in a single disposition order is imposed on a youth for two or more offenses, the terms shall run consecutively, subject to the following limitations:
>     (a) Where the offenses were committed through a single act or omission, omission, or through an act or omission which in itself constituted one of the offenses and also was an element of the other, the aggregate of all the terms shall not exceed one hundred fifty percent of the term imposed for the most serious offense;
>     (b) The aggregate of all consecutive terms shall not exceed three hundred percent of the term imposed for the most serious offense; and
>     (c) The aggregate of all consecutive terms of community supervision shall not exceed two years in length, or require payment of more than two hundred dollars in fines or the performance of more than two hundred hours of community restitution.

A.C.M. contends the attempted robbery in the first degree and the assault in the second degree were committed "through a single act" or "through an act or omission which in itself constituted one of the offenses and also was an element of the other" under RCW 13.40.180(1)(a).[3] He claims the trial court could not

---

[3] A.C.M. does not contend that the burglary in the first degree was also part of the same act.

sentence him to more than 150 percent of the term for the most serious offense for the attempted robbery and assault combined.[4]

We first address whether the assault and attempted robbery were committed through a single act. The inquiry in determining whether offenses were committed "through a single act or omission" is the same inquiry that is used to determine whether multiple crimes constitute the "same criminal conduct" in the adult sentencing context.[5] State v. Contreras, 124 Wn.2d 741, 746-48, 880 P.2d 1000 (1994). The juvenile court must determine whether the crimes "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a)). If any of these elements is missing, multiple offenses do not constitute the same criminal conduct. State v. Lessley, 118 Wn.2d 773, 778, 827 P.2d 996 (1992).

Even assuming, for purposes of our analysis, that the attempted robbery in the first degree and the assault in the second degree shared the same objective criminal intent and were committed at the same time and place, A.C.M.'s claim that they were committed through a single act fails because the offenses did not involve the same victim. Nowhere in his briefing does A.C.M. assert that the two offenses involved the same victim. Even if he did, such a contention would not be well taken.

The victim of the attempted robbery in the first degree was J.S., while the victim of the assault in the second degree was Smiley. As the trial court

---

[4] Each of the counts carried the same range of 15-36 weeks.

[5] Although A.C.M. also argued below that the assault and attempted robbery convictions merged, it appears he has abandoned this claim on appeal.

concluded in its unchallenged findings of fact and conclusions of law, A.C.M. was guilty of attempted robbery in the first degree in that he:

> [t]ook a substantial step towards the commission of the crime of Robbery in the First Degree when [J.C.], [D.S.], and [A.C.M.] walked over to the Smiley residence carrying a baseball bat they intended to use to assault and subdue [J.S.] so that they could steal [J.S.'s] marijuana and/or money. The three respondents also had ski masks and a beanie in their possession which they intended to use to conceal their identities during the robbery. [A.C.M.] and his accomplices intended to take the money and/or marijuana from [J.S.], who was not a participant in the crime, against his will by the use of threatened or immediate force to either obtain or retain possession of the property or to overcome any anticipated resistance to the taking. The respondents intended to inflict bodily injury on the victim by using the baseball bat to strike the owner of the property. Furthermore, the bat was intended to be used in such a manner as to cause substantial bodily harm or was readily capable of causing death.

Clerk's Papers (CP) at 33 (emphases added). The intended victim of the attempted robbery was J.S.[6] Next, as the trial court concluded, A.C.M. was guilty of assault in the second degree in that he intentionally assaulted Smiley with a baseball bat. The victim of the assault was Smiley.

A.C.M. contends, alternatively, that the attempted robbery and the assault were committed "through an act or omission which in itself constituted one of the

---

[6] While the juvenile court's written findings of fact and conclusions of law indicate that it found J.S. was the intended victim of the attempted robbery, the court was ambivalent in its oral ruling at the disposition hearing. After determining that the attempted robbery and assault were not the same criminal conduct because the former took place before the latter, the court stated, "I'm not so sure about the victim issue. I tend to agree with [defense counsel], as the homeowner, that [Smiley] was at least within the scope of victim for the perceived theft."VRP (10/6/11) at 402-03. Nevertheless, "two crimes cannot be the same criminal conduct if one involves two victims and the other only involves one." State v. Davis, 90 Wn. App. 776, 782, 954 P.2d 325 (1998) (citing State v. Davison, 56 Wn. App. 554, 784 P.2d 1269 (1990). In Davis, we held that an assault and a burglary were not the same criminal conduct because the assault involved one victim and the burglary involved the same victim but also another victim. Id. at 782. Here, even if J.S. and Smiley were victims of the attempted robbery in the first degree, Smiley was the sole victim of the assault in the second degree and there was still not a "single act" comprising both the assault and the attempted robbery.

offenses and also was an element of the other" under RCW 13.40.180(1)(a), in which case the 150 percent rule would still apply. He devotes minimal briefing to this argument, asserting only that the acts constituting the assault raised the attempted robbery to first degree and that therefore the assault was an element of the attempted robbery in the first degree.

We disagree that the acts constituting the assault were an element in the attempted robbery in the first degree. For the charge of attempted robbery in the first degree, the State was required to prove that A.C.M. possessed the intent to commit robbery in the first degree and took a substantial step toward the commission of that crime. The juvenile court, in its unchallenged findings of fact and conclusions of law, determined that A.C.M. possessed the intent to commit that crime in the first degree by intending to inflict bodily injury and by intending to use a deadly weapon (the baseball bat).[7] The court further determined that A.C.M. took a substantial step toward the commission of robbery in the first degree when he and his co-respondents walked to the Smiley residence carrying a baseball bat. Thus, the attempted robbery in the first degree was established by acts completed before the acts constituting the assault on Smiley, and the State was not required to prove A.C.M. committed the acts constituting the assault to prove the attempted robbery.

A.C.M.'s adjudications for attempted robbery and assault were not committed through a single act or through an act that constituted one of the

---

[7] That A.C.M. intended to inflict bodily injury and intended to use a deadly weapon in carrying out the planned robbery was supported by the juvenile court's findings that the three youths formed a plan the night before to assault and subdue J.S. with the baseball bat before taking his money and marijuana.

9

offenses and was an element of the other. Accordingly, the juvenile court properly determined that the 300 percent rule applied under RCW 13.40.180(1)(b).[8]

### Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel presents mixed questions of fact and law and is reviewed de novo.[9] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To demonstrate ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must demonstrate that his attorney's representation was deficient and that it fell below an objective standard of reasonableness. Second, a defendant must show that he or she was prejudiced by the deficient representation. Id. Prejudice exists if "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We need not address both components of this inquiry if the defendant fails to make an adequate showing on one. Strickland, 466 U.S. at 697.

A.C.M. alleges defense counsel was ineffective because he argued merger and did not present with sufficient clarity at disposition the applicability of

---

[8] We note that the juvenile court actually appears to have applied the two-year maximum for community supervision under RCW 13.40.180(1)(c), not the 300 percent rule under RCW 13.40.180(1)(b). A.C.M. was not ordered to community supervision, and his sentence would have been capped at 108 weeks, not 104 weeks. Regardless, where the State does not cross-appeal this issue, we leave the sentence undisturbed.

[9] Both the state and federal constitutions guarantee the right to effective assistance of counsel. U.S. Const. amend. VI; Wash. Const. art. I, § 22.

the 150 percent rule. But A.C.M. can only show prejudice if a better presentation of the argument would have been successful. This, he cannot do, as we have considered the argument and rejected it. Because A.C.M. cannot establish that, but for counsel's inartful argument below, his disposition would have been different, his ineffective assistance claim fails.

Affirmed.

WE CONCUR: