

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35367-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CODY TYLER BENNIE WARDLAW, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Cody Wardlaw appeals the trial court's denial of his request to

be sentenced to a prison-based DOSA[1] following his convictions in this matter for one

count of residential burglary, one count of second degree burglary, and one count of

possession of a stolen motor vehicle, and his conviction in a separate matter of one count

of first degree trafficking in stolen property.[2]  Mr. Wardlaw contends the trial court

abused its discretion when it based its denial of the sentencing alternative on an

impermissible factor: Mr. Wardlaw's asserted lack of remorse.  The trial court's

observation that Mr. Wardlaw was not remorseful was in the context of questioning the

---

[1] Drug offender sentencing alternative.  *See* RCW 9.94A.660.
[2] That charge was filed in Stevens County Superior Court, cause no. 17-1-00117-6, and is the subject matter of another appeal.  *See State v. Wardlaw*, No. 35366-4-III.

sincerity of his commitment to treatment. Because we find no abuse of discretion and Mr. Wardlaw raises no meritorious issues in a statement of additional grounds, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In February 2017, Chewelah Police Sergeant Ryan Pankey was on patrol when he responded to a report that a 2011 Subaru Legacy, stolen a couple of days earlier during a residential burglary, had been sighted crashed into a fence off of Heine Road. Sergeant Pankey located the vehicle, which was positioned so that it was not possible to get out of the driver's side door. Footprints beginning outside the open front passenger door led south on Heine Road.

Driving south on Heine Road, Sergeant Pankey contacted Mr. Wardlaw, who was walking south and was wearing snow boots with soles that matched the footprint path from the crashed Subaru. After Mr. Wardlaw provided implausible answers to the sergeant's questions about what he was doing and where he had come from, the sergeant told Mr. Wardlaw he was being detained for further investigation. At that point, Mr. Wardlaw admitted knowing something about the Subaru. The sergeant suggested that they wait to talk further until they arrived at the police department.

At the department, and having been read his *Miranda*[3] warnings, Mr. Wardlaw admitted to his involvement in several recent burglaries at three different locations,

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

including the burglary in which the crashed Subaru Legacy had been stolen. He was

charged with two counts of residential burglary, two counts of second degree burglary,

and one count of possession of a stolen motor vehicle.

Mr. Wardlaw agreed to enter guilty pleas in both of his pending matters. In this

case, he agreed to plead guilty to one count of residential burglary, one count of second

degree burglary, and the one count of possession of a stolen motor vehicle, in exchange

for which the State agreed to dismiss one residential burglary count and one second

degree burglary count.

At a sentencing hearing that addressed his convictions in both matters, Mr.

Wardlaw asked for a prison-based DOSA. His lawyer explained to the court that Mr.

Wardlaw had "a severe drug problem with methamphetamine" despite treatment that led

to a two-year period of sobriety years earlier. Report of Proceedings (RP) at 18. He

argued that with a prison-based DOSA, Mr. Wardlaw would have the "opportunity to try

and remedy this problem so he's not right back out after he gets out of prison doing the

same things over and over again." RP at 20.

The prosecutor conceded that Mr. Wardlaw had been "very cooperative" with law

enforcement but nonetheless recommended a standard range prison sentence. RP at 17.

The prosecutor told the court:

> [L]aw enforcement had him on possession of stolen motor vehicle but he
> admitted to burglaries and if he hadn't admitted to [them] it would have
> been very, very difficult if not impossible to prove. But he was very

3

cooperative—law enforcement.  He is accepting—responsibility here—very—at a fairly early—time in the case, and he's agreed to pay full restitution to all of the victims here.

. . . that is significant.  I think—he does deserve some credit for that. But—the court weighs the harm that he's—he's done to the community and his criminal history, versus the—the mitigating factors, I do believe that he should—just get a straight prison sentence here, your Honor.

RP at 17-18.  With offender scores ranging from 7 to 9 on the three counts, the lowest standard range for Mr. Wardlaw's sentences in this matter was 22 to 29 months, and the highest range was 63 to 84 months.  The State recommended a total period of confinement of 73 months.

In letters to the trial court, Mr. Wardlaw's mother, grandmother, and sister asked that it impose a sentence that included substance abuse treatment, and Mr. Wardlaw's father appeared at the sentencing to make the same request.  Recounting Mr. Wardlaw's substance abuse issues and the turmoil it had caused for his family, Mr. Wardlaw's father echoed defense counsel's request for a prison-based DOSA, stating: "I'm not asking for time off.  I'm asking for him to get the help he needs when he's in there."  RP at 21.

When given the opportunity to allocute, Mr. Wardlaw told the court:

I don't want to get high any more. . . .  Never once did I come into this thinking and saying that, "It wasn't me," "I'm completely innocent." You know, I know I had a part in all this, and I know I deserve to be punished. . . .

When I left [treatment] seven years ago,—it gave me the tools and I stayed clean for almost two years,—two years—I didn't go to meetings; I just—I knew what to do, and I—I would like to have those tools in my life again.  I don't—I don't want to be—part of the problem any more.  I don't—And I know Stevens County's getting cleaned up and I'm sorry I

had to be part of the trash that needed to be taken out, but—I want to be
part of the solution again.

RP at 23-24. He also told the court that without the alternative, he would "sit in prison

for 73 months straight learning how to get comfortable doing time" and "come out not

caring. . . . I'm going to have no family. I'm going to be angry." RP at 26.

The trial court considered the letters, statements and argument to the court but

denied the request for a DOSA, telling Mr. Wardlaw, "I don't think that you expressed

any remorse or regret about what you did to your victims, about the people you have

terrorized. . . . Your remorse here today, Mr. Wardlaw, is for yourself." RP at 27.

Noting that Mr. Wardlaw's victims would "have to live with this victimization for the

rest of their lives," the court explained:

> You have—essentially just been on a spree of terrorizing people, and
> come and said, "You know what? I'm a raging drug addict, I have been for
> years, the treatment I went to didn't work; you know, I would like to be
> able to employ all the skills I learned at [treatment]."
> Well, you could have. You didn't. You still can.
> So there's self-help for you, there's all kinds of education and help
> that you can get on your own volition while you are incarcerated.

RP at 27-28. The court expressed its hope that time spent in prison "will persuade you to

act in your own best interest and get the help that you need while you can, but [it will]

most definitely deter you from coming back in this community and terrorizing people."

RP at 28. It sentenced Mr. Wardlaw to 73 months' total confinement in this matter. He

appeals the denial of a DOSA.

ANALYSIS

By statute, a sentence within the standard sentence range is not appealable.  RCW 9.94A.585(1).  This includes a standard range sentence imposed after rejecting a defendant's request for a DOSA.  *State v. Grayson*, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005).  An offender may challenge the procedure under which his sentence was imposed, however.  *Id.*  "A court that fails to consider a requested alternative abuses its discretion."  *State v. Hender*, 180 Wn. App. 895, 901, 324 P.3d 780 (2014).

Mr. Wardlaw contends that he met all of the criteria to be eligible for the drug offender sentencing alternative, and his remorse or lack thereof "is not an appropriate factor in assessing whether he merits regimented, structured, and highly incentivized drug treatment."  Br. of Appellant at 8-9.

When the drug offender sentencing alternative is imposed, "the defendant serves only about one-half of a standard range sentence in prison and receives substance abuse treatment while incarcerated."  *Hender*, 180 Wn. App. at 900.  A DOSA is intended to provide treatment to offenders judged likely to benefit from treatment.  *Grayson*, 154 Wn.2d at 337.  If the offender meets the statutory criteria, trial courts have broad discretion whether to grant a DOSA.  RCW 9.94A.660.

The State concedes that Mr. Wardlaw was eligible for a prison-based DOSA, "[b]ut eligibility does not automatically lead to a DOSA sentence."  *Hender*, 180 Wn.

App. at 900. The sentencing court must determine if the alternative sentence is appropriate. *Id.*

Mr. Wardlaw focuses on the trial court's comment on his lack of remorse, ignoring the broader context in which his lack of remorse was a cause of concern to the court. The court did not speak only of a lack of remorse, but observed that Mr. Wardlaw had repeatedly committed crimes, terrorizing his victims, knowing that treatment could be successful, but with no renewed effort to overcome his substance abuse problem. It also placed importance on community safety. Mr. Wardlaw argues that his failure to obtain treatment on his own does not render him ineligible for a DOSA, and we agree. But in deciding whether to impose the sentencing alternative, a reasonable sentencing court could view the matters observed by this court—a concern for community safety, and an offender's drug-driven, repeated infliction of harm on innocent victims with no effort to stop and no remorse-driven desire to stop—as relevant. We find no abuse of discretion.

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds, Mr. Wardlaw raises two.

*Ineffective assistance of counsel.* Mr. Wardlaw argues his trial lawyer was ineffective for failing to argue that at the time of his crimes, Mr. Wardlaw was mentally incompetent due to his drug use, was sleep deprived, was "off [his] psych meds," and was not of sound mind. Statement of Additional Grounds at 1.

7

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate that a lawyer's representation was deficient and that the deficient representation prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Courts engage in a strong presumption that counsel's representation was effective. *Id.* at 335.

Mr. Wardlaw pleaded guilty. He does not demonstrate that the circumstances he contends should have been advanced at sentencing would have strengthened his case for a DOSA or a more lenient sentence. Admitting noncompliance with prescribed medication could easily have hurt his chances for the sentencing alternative. The showings required for a claim of ineffective assistance of counsel are not made.

*Judicial bias.* Mr. Wardlaw argues that the trial court was biased against him, which is the reason he was denied a DOSA. He points specifically to the trial court's focus on his lack of remorse and an allegation that his codefendant received a more lenient sentence. Because the trial court's consideration of his lack of remorse was adequately addressed by counsel, it need not be addressed again. *See* RAP 10.10(a).

This court presumes that a trial court performed its functions regularly and properly without bias or prejudice. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). A party seeking to overcome that presumption must provide specific

8

facts establishing bias. *Id.* Judicial rulings alone almost never constitute a valid showing of bias. *Id.*

Merely demonstrating denial of a requested DOSA is not enough here; we have already held that a reasonable sentencing court could rely on the considerations that led the trial court to impose a standard range sentence. Codefendants may commit the same crime, but they have distinct histories and characteristics. A court sentencing codefendants is not required to impose identical sentences. Mr. Wardlaw does not demonstrate specific facts establishing bias.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

9