**FILED**
**MARCH 19, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | |
| | ) | No. 36785-1-III |
| D.H. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, J. — After a 17-month dependency during which D.H.'s father either

failed to engage in services or failed to make adequate progress, his parental rights to his

son were terminated. He does not assign error to any trial court findings, but contends he

received ineffective assistance of counsel when his trial lawyer failed to object to a

therapist's opinions that he argues were improperly offered under ER 904. His argument

is based on the assumption that his lawyer misunderstood the limitations of ER 904,

when it is equally plausible that his lawyer preferred to have the therapist's unhelpful

opinions presented on paper rather than live.

Both parties agree that we may apply the standard for ineffective assistance

provided by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984), under which we find neither deficient representation nor prejudice.[1] We affirm.

---

[1] There is an unsettled question whether a different standard for what constitutes ineffective representation applies in proceedings under chapter 13.34 RCW. *See, e.g.*, *In re Welfare of J.M.*, 130 Wn. App. 912, 920, 125 P.3d 245 (2005) (discussing the

FACTS AND PROCEDURAL BACKGROUND

Two years before D.H. was born, the Department of Social and Health Services (Department)[2] became involved with his father and mother when the Department filed a petition seeking a dependency finding as to the couple's twin infant boys. In that petition, the Department asserted that the father had a history of domestic violence, had been verbally abusive toward the twins, suffered from substance abuse, was unwilling to engage in services, and refused to feed the twins. The father failed to comply with court-ordered services during the dependency. In July 2015, the father and mother stipulated to the termination of their parental rights to the twins.

D.H. was born in January 2017. The parents attempted to deliver him at their home to avoid Child Protective Services (CPS) intervention. The delivery did not go as planned, and the mother had an emergency C-section and was hospitalized. CPS received a referral from hospital staff, who reported the mother and D.H. could have died during the attempted at-home birth.

Three days after D.H.'s birth, he was removed from his parents' care and the Department filed a dependency petition, alleging he was in danger based on the parents'

different, due process standard applied in *In re Moseley*, 34 Wn. App. 179, 184, 660 P.2d 315 (1983)).

[2] During the pendency of D.H.'s dependency, responsibilities for child welfare transferred from the Department of Social and Health Services to the Department of Children, Youth, and Families. *See* RCW 43.216.906. This opinion refers to both as "the Department."

"long history of drug use, violence and inability/unwillingness to change their parental deficiencies" and the father's sex offender status. Sealed Ex. 1. Following a shelter care hearing, the Department referred the father for chemical dependency screening and any recommended evaluation and treatment, random urinalysis and blood alcohol testing, psychological evaluation, mental health assessment and treatment, parenting assessment, and anger management and/or domestic violence assessment.

D.H. was found dependent in June 2017. The order of dependency required the father to complete services that included an updated chemical dependency evaluation, random urinalysis for THC[3] and alcohol, following recommendations from the prior psychological evaluation, a mental health assessment and treatment, a parenting assessment, family therapy, and anger management. When the parents had not addressed their deficiencies and there was little likelihood the conditions would be remedied so that D.H. could be returned to either parent in the near future, the Department petitioned in July 2018 to terminate their parental rights.

D.H.'s mother stipulated to the termination of her parental rights in October 2018. The father's termination trial took place in January 2019.

Before the trial, in mid-November 2018, the Department served notice under ER 904 of the documents it intended to offer at trial. It listed as its proposed exhibits 4

---

[3] Tetrahydrocannabinol.

3

through 7 the order of dependency as to the father and three dependency review orders.

The notice said the documents would be "deemed authentic and admissible without

testimony or further identification, unless an objection is served within 14 days." Sealed

Clerk's Papers (CP) at 56. The father concedes no objection was served. When the

Department offered exhibits 4 through 7 at trial, the father did not object and the exhibits

were admitted.

The father does not assign error to any findings of fact eventually entered by the

trial court. Disregarding the one finding the father now argues was based on evidence

that would have been excluded had an objection been made, the trial court found the

following matters, among others, were proved by the Department:

- Services court-ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting parental deficiencies within the foreseeable future have been offered or provided. Finding V.
- The father's paranoid mind-set in attempting home delivery of D.H. "nearly led to fatality" and "[h]is outlook and lack of insight have not changed." Finding VI.
- The father "testified as he has in the dependency that he does not acknowledge the court's authority over him." His denial of parenting problems at trial "was near-delusional." Finding VIII.
- The father was offered several drug-alcohol assessments but never completed one successfully. When assessed, he was untruthful about his use and falsely stated that CPS was not concerned about his marijuana use. He admitted at trial to using marijuana on a several times daily basis. He rarely participated in court-ordered urinalysis, never produced consistently clean results, and spends significantly more money on drug use than on support of his child. Finding IX.
- A psychological evaluation revealed significant psychological, emotional, and substance-related challenges or problems, as well as rather significant anger

management issues, which have been pervasive throughout much of his life. Many of his issues, which resulted in the termination of his parental rights to his twin sons in 2015, were unaltered in 2017 and remain the case. Finding X.

- The father was court-ordered to pursue counseling to include an anger management component. He minimally participated, then abandoned treatment, and was discharged for lack of contact. He claims not to need the service. Finding XIII.

- The father was court-ordered to participate in parenting instruction, which was offered, but he did not attend and was discharged for lack of contact or follow through. He opted to renew family therapy a year later but never fully cooperated and engaged. Two years into placement of D.H. he had made little or no progress toward therapeutic goals. He remained hostile to authority, paranoid, and irrationally anti-government. Findings XV-XVII.

- The father was recommended to participate in a minimum one-year domestic violence perpetrator treatment but has refused to comply with conditions that he provide his criminal history and abstain from marijuana use. Findings XVIII-XIX.

- The father has maintained less contact with D.H. than was available. Finding XXI.

- The father was hostile to the Department's social work services and failed to maintain court-ordered contact. Finding XXII.

- The father has three children older than D.H., none of whom he has ever successfully parented. He has had limited contact with his oldest child, a daughter, and avoids speaking of her, even in therapeutic contexts. His parental rights to his twins were terminated after he failed to participate or cooperate with court-ordered services in their dependencies. Finding XXIV.

- There is little likelihood that conditions will be remedied so that D.H. can be returned to the father in the near future. Throughout the dependency, he admitted he was in no position for placement of D.H. Although he somewhat changed his position at trial, he continues to be adamant that the court lacks authority over him, denies that he has deficiencies, and sees no reason to cooperate with most services, with the result of no progress toward D.H.'s return home. Finding XXV.

- The father is currently unfit, having deficiencies rendering him unable to safely parent D.H. He has no insight. He is habitually hostile and mistrustful. He has chronic emotional dyscontrol. There is no hope of improvement. Finding XXVI.

- The father's parental deficiencies continue to include drug/alcohol use, including chronic use of marijuana; lack of parenting skills; history of sex abuse/criminality as a perpetrator; lack of safe, stable environment; unwillingness to provide financial support; and unwillingness to engage in services to address parental deficiencies. Finding XXVII.

- D.H. cannot afford to wait the year or more that experts indicate would be required for the father to progress, and there is no indication the father would devote himself to services or change. Finding XXIX.

- Continuation of the parent-child relationship clearly diminishes D.H.'s prospects for early integration into a permanent and stable home. Finding XXX.

- It is in D.H.'s best interests to terminate the parent-child relationship. Finding XXXI.

CP at 89-107.

At the conclusion of the evidence and argument, the court orally announced findings, and that it would terminate the father's parental rights. The written findings, conclusions and order were entered thereafter. The father appeals.

ANALYSIS

Under ER 904, a party to a civil case may serve advance notice of certain documents it intends to offer as exhibits at trial and, absent a timely objection, they will be deemed admissible. The rule identifies five specific classes of documents that are eligible for admission on this basis and a sixth "catchall" class: "A document not specifically covered by any of the foregoing provisions but relating to a material fact and having equivalent circumstantial guaranties of trustworthiness, the admission of which would serve the interests of justice." ER 904(a)(6). The five specifically enumerated classes of documents in ER 904(a) contain factual information, not opinions. *Lutz Tile,*

6

*Inc. v. Krech*, 136 Wn. App. 899, 905, 151 P.3d 219 (2007). Applying the doctrine of ejusdem generis, this court has held that the catchall provision of the rule is meant to apply to documents containing facts, not opinions. *Id.*

The Department served notice of its intent to offer exhibits 4 through 7 sufficiently in advance of trial. Each of the proposed exhibits—orders entered during the dependency—included a summary of a parenting assessment that had been performed by Allison Morgan early on in the process, in March 2017. The summary reflected the following observations and recommendations.

> Summary:
> - The father presents with anger management issues, with paranoid features, and aggressive tendencies.
> - The father displays an extreme hate for the government and "the system." He stated that if [D.H.] is taken away from him, those involved had better "watch out."
> - The father appears to be cannabus [sic] dependent.
> - The father took no responsibility for his role in CPS involvement.
> - The father expressed little to no responsibility in his sex offender status; he was not forthcoming about his complete history of sexual contact as a minor.
> - The father does not have steady employment or safe living environment for a baby.
> - The father appeared attentive to the baby, keeping good eye contact, and talking to him gently, most of the time.
> - The father mocked and teased the baby re: eating.

Recommendations:
- Contact with the child occurred only in family counseling environment (Ms. Morgan opined that unsupervised care is likely to result in physical harm and neglect, as well as acute emotional harm.)
- Domestic violence evaluation and recommended treatment
- Anger management training in the context of individual counseling
- Psychological evaluation
- Abstinence from all drugs and alcohol; random UA/BA[4] testing
- If/when the baby is returned to the parental care, random UAs and weekly pediatrician visits should be mandatory for two years

Ms. Morgan noted that the father's anger, substance use, and lack of emotional regulation seem effectively unchanged from the time of termination of his parental rights in 2015.

Sealed Ex. 4.

The father did not make a timely objection. And when exhibits 4 through 7 were offered at trial, the father's lawyer stated that the request for their admission was "without objection, your Honor." Sealed Report of Proceedings (RP) at 38.

The father now argues that he received ineffective assistance of counsel when his lawyer failed to object to the admission of exhibits 4 through 7, or at least the portions of those exhibits that reflected Ms. Morgan's opinions.

To demonstrate ineffective assistance of counsel under the *Strickland* standard, the father must satisfy a two-pronged test. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). The father must show "(1) deficient performance and (2) resulting

---

[4] Urinalysis/blood alcohol.

prejudice." *Id.* at 457-58. Counsel's performance is deficient if "it fell below an objective standard of reasonableness based on considerations of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice results from counsel's deficient performance if "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 335. Failure to establish either prong is fatal, and this court need not consider both prongs if a claim can be disposed of on one ground. *Strickland*, 466 U.S. at 697.

Washington courts strongly presume "that counsel's representation was reasonable." *Estes*, 188 Wn.2d at 458. The presumption is easily applied here. A principal, if not *the* principal, reason a party would provide advance notice of exhibits under ER 904 is to reduce the number of witnesses the party needs to call or have available at the time of trial. If we assume the Department viewed Ms. Morgan's opinions as important,[5] a timely objection by the father in November 2018 would have

[5] It does not appear the Department viewed Ms. Morgan's almost two-year-old parenting assessment as an important part of its evidence. It had arranged for an updated parenting assessment to be prepared in October 2018 by Heather Dazell. Ms. Dazell testified at trial and could (and did) testify to having reviewed, and largely agreed with, Ms. Morgan's earlier report. *See* ER 703. In closing argument, the Department's lawyer referred to Ms. Dazell's testimony about the recent parenting assessment but did not refer to the older assessment by Ms. Morgan.

Although we need not address prejudice, it does not appear the court attached much significance to Ms. Morgan's assessment either. It did reproduce her opinions, but in only one of its 37 findings. Even there, while noting that Ms. Morgan opined that unsupervised care by the father was likely to result in physical harm and neglect, it added its finding that "this remains the case at the time of the termination proceedings"—clearly

given the Department ample time to arrange for her to appear at the January 2019 trial. The father's lawyer could easily have concluded that it would be better for Ms. Morgan's opinions to come in as one piece of information in the Department's 35 trial exhibits rather than as live testimony (with possible elaboration) during trial. The father does not demonstrate deficient performance.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____  _____
Lawrence-Berrey, J.         Korsmo, A.C.J.

---

relying on more recent evidence. CP at 95. Among that evidence was testimony at trial to the following opinion of Dr. Paul Wert, to whom the father was referred for two psychological evaluations:

> "It is very difficult to see how [the father] could be perceived as providing potentially safe parenting to his son [D.H.] in unsupervised conditions. [The father]'s self-acknowledged anger management problems, as well as a tendency toward sadistic behavior, would seemingly put [D.H.] at risk of physical harm."

RP at 363.