FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAY -6 AM 9: 25

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69901-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARK GREGORY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 6, 2013 |
| | ) | |

VERELLEN, J. — Mark Gregory appeals his convictions for third degree rape and fourth degree assault with sexual motivation. Gregory argues his counsel was ineffective for failing to raise a hearsay objection to testimony by law enforcement, medical professionals, and the victim's family about what the victim had said about her encounter with Gregory. But defense counsel's failure to object could be characterized as legitimate trial strategy. The victim's trial testimony about the encounter was, at times, inconsistent with the alleged hearsay testimony, and defense counsel highlighted those inconsistencies in closing argument.

Gregory also argues the State presented insufficient evidence to support both convictions. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, a rational trier of fact could have found the elements of both crimes beyond a reasonable doubt.

Finally, Gregory contends, and the State concedes, that the court erred in imposing a maximum sentence under RCW 9.94A.507.

We affirm the convictions, but remand for correction of Gregory's judgment and sentence.

## FACTS

On June 12, 2010, Anna Ray and her husband went out to a bar. Later that evening, Ray and her husband got into an argument. Ray's husband left her at the bar. Ray asked the bouncer to call a taxi for her. Gregory was already waiting in his taxi van near the entrance to the bar. The bouncer asked Ray for her address, repeated it to Gregory, and asked him to take Ray home. The bouncer opened the front door of the taxi, and Ray got in. It appeared to Gregory that Ray was "tipsy."[1]

Gregory asked Ray why she was alone, and Ray replied that her husband had left her at the bar. Gregory testified that Ray grabbed Gregory's hand to hold it as they drove. Gregory testified that while they were stopped at a traffic light, he and Ray kissed each other. He asked Ray if she wanted to fool around, and, according to Gregory, Ray responded that she did. Gregory testified that as they drove, he took Ray's hand and placed it on top of his penis, and that Ray kept her hand there for about five to ten minutes.

Gregory pulled the taxi van over in some bushes nearby a Safeway. Ray asked Gregory what they were doing there. Gregory replied that they were "taking a break" and started to rub Ray's left leg.[2] Ray testified that at this point, Gregory took her hand and placed it on his pants, on top of his penis. Ray testified that she attempted to pull her hand away from Gregory's penis, but Gregory kept Ray's hand there. Ray did not say anything to Gregory or ask him to stop, because she was nervous and scared.

---

[1] Report of Proceedings (Apr. 4, 2011) at 315.

[2] Id. at 253.

Gregory got out of the taxi and walked to the passenger's side. Gregory grabbed Ray by the arm and lead her to the back of the van. Ray did not scream because she thought Gregory might do "bad things" to her.[3] Gregory attempted to remove Ray's underwear. Ray again asked Gregory what he was doing. Gregory replied, "It's okay, no problem."[4] As Gregory removed her underwear, Ray understood "what's going to happen."[5] She told Gregory she was having her period. Gregory attempted to perform oral sex on Ray, and she pushed his head away.

According to Ray, Gregory took his penis out of his pants, opened Ray's legs and removed her tampon. According to Gregory, Ray appeared ready to have sex and removed the tampon herself. Gregory then had intercourse with Ray, which lasted for approximately five to ten minutes. Ray testified that she did not say anything to Gregory or attempt to push him away because she was "just so scared that night, and I feel that I'm alone. Just scared."[6] Ray did not tell Gregory that she wanted to have sex with him or make any advances to indicate she wanted to have sex with him. According to Gregory, however, Ray complimented his sexual performance. Gregory and Ray returned to the front seat, and Gregory drove Ray home. During the course of the interaction, Gregory did not overtly threaten Ray.

Within a few minutes after arriving home, Ray went across the street to her in-laws' house. Ray's mother-in-law and Ray's husband testified they found Ray lying in a ball on the floor, hysterical and crying. When Deputy Joe Hedstrom arrived at Ray's in-

---

[3] Id. at 258.

[4] Id.

[5] Id.

[6] Id. at 262.

laws' home, he had difficulty getting information from Ray. Deputy Hedstrom called Deputy Crystal Gray to the scene, as Ray said she would prefer to talk with a female deputy. Ray appeared visibly distraught as she interacted with her husband, her in-laws, and Deputy Gray.

After Ray had identified Gregory, Detectives Timothy Keeler and Chad Birkenfeld contacted Gregory at his boat in a local marina. At first, Gregory denied he had any sexual activity with Ray. After Detective Birkenfeld told Gregory that Ray had given law enforcement a different account of the evening, Gregory admitted he had sex with Ray.

The State charged Gregory with rape in the third degree, unlawful imprisonment, and assault in the fourth degree with sexual motivation. The jury found Gregory guilty of the rape and assault charges, but acquitted him on the unlawful imprisonment charge. The trial court imposed a standard range sentence of 29 months. However, a box on the judgment and sentence was checked which indicated that under RCW 9.94A.507, the maximum sentence was confinement for life.

Gregory appeals.

## DISCUSSION

### *Ineffective Assistance of Counsel*

Gregory contends he was denied effective assistance of counsel. A criminal defendant has a constitutional right to effective assistance of counsel.[7] Gregory bears the burden of demonstrating both (1) that defense counsel's representation fell below an objective standard of reasonableness; and (2) resulting prejudice, i.e., a reasonable probability that but for counsel's deficient performance, the result of the proceeding

---

[7] Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

would have been different.[8] There is a "strong presumption" that counsel's performance was reasonable.[9] If a defendant fails to establish either prong, we need not inquire further.[10] We review ineffective assistance claims de novo.[11]

Gregory contends various witnesses gave inadmissible hearsay testimony in recounting what Ray had told them the evening of June 12. Where a defendant claims ineffective assistance based on counsel's failure to challenge the admissibility of evidence, the defendant must show that counsel lacked legitimate strategic or tactical reasons to support the challenged conduct, that an objection would have likely been sustained, and that the result of trial would have been different had the evidence been excluded.[12] If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, it cannot provide a basis for a claim of ineffective assistance of counsel.[13] The decision not to object may be a legitimate trial strategy.[14]

Detective Birkenfeld testified that Ray had told him she was not forced to stroke Gregory's penis, that Gregory had kissed her, and that she cried a little bit. Defense counsel did not object. Ray's mother-in-law, Sheila Morgan, testified Ray told her she

---

[8] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[9] State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

[10] State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

[11] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[12] McFarland, 127 Wn.2d at 336-37.

[13] State v. Aho, 137 Wn.2d 736, 745, 975 P.2d 512 (1999).

[14] In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004) (defense counsel's decision not to object to possible improper victim impact evidence was legitimate trial strategy, as counsel may not have wanted to risk emphasizing the testimony with an objection).

had been raped by a taxi driver. Joseph Ray, Ray's husband, also testified that Ray told him she was raped. Defense counsel did not object to either witness's testimony.

Deputy Hedstrom testified that he overheard Ray tell Deputy Gray that she was raped by a taxi driver. Defense counsel did not object. Deputy Gray then testified that Ray told her she was raped by a taxi driver named Mark. Defense counsel did not object. Deputy Gray testified that Ray told her all the contact occurred in the front of the taxi van, and that Ray attempted to resist Gregory and push him off.

Finally, Nora Sullivan, a sexual assault nurse, examined Ray early on the morning of June 13. Sullivan testified that Ray told her Gregory opened his pants and put her hand directly on his penis, rather than on top of his pants. Sullivan also testified that Ray told her she rubbed Gregory's belly after intercourse so he would take her home and not hurt her. Defense counsel did not object.

As the State suggests, defense counsel likely made a strategic decision to allow the jury to hear the numerous variations in Ray's recounting of the events.[15] Consistent with such a strategy, defense counsel in closing argument highlighted the inconsistencies between Ray's trial testimony and the alleged hearsay testimony. Because defense counsel's failure to object could amount to legitimate trial strategy, Gregory does not demonstrate ineffective assistance of counsel.[16]

---

[15] The State also correctly notes that even if defense counsel had objected to the testimony, the objections would not have been sustained. See Resp't's Br. at 12; McFarland, 127 Wn.2d at 336-37. The record contains ample evidence that Ray remained under the stress of the rape when she made the statements, rendering those statements admissible under the excited utterance exception to hearsay. ER 803(a)(2); State v. Thomas, 150 Wn.2d 821, 853, 83 P.3d 970 (2004).

[16] Aho, 137 Wn.2d at 745. Gregory also argues that, absent the hearsay testimony of these witnesses, he would not have been found guilty. See Appellant's Br.

*Sufficiency of the Evidence*

Gregory contends the State presented insufficient evidence to support his convictions for third degree rape and fourth degree assault with sexual motivation. In analyzing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found elements of the crime beyond a reasonable doubt.[17] When challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence.[18] We give great deference to the finder of fact in resolving conflicting testimony and weighing the evidence.[19] Circumstantial and direct evidence are accorded equal weight.[20]

To prove Gregory committed third degree rape, the State had to prove beyond a reasonable doubt that Gregory engaged in sexual intercourse with another person, not married to him, where the victim did not consent, and that lack of consent was clearly expressed through the victim's words or conduct.[21] Gregory contends the State presented insufficient evidence that Ray clearly communicated her lack of consent to intercourse.

Gregory highlights that Ray never told him to stop as he took his penis out and had intercourse with her, after she had told him to stop when he tried to perform oral

at 16. This argument is without merit, as a jury could have found from Ray's testimony alone the elements of both third degree rape and fourth degree assault.

[17] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[18] Id.

[19] Thomas, 150 Wn.2d at 874-75.

[20] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[21] RCW 9A.44.060, .010(7).

sex. There is sufficient evidence demonstrating Ray's lack of consent: Gregory knew Ray was tipsy, Ray tried to pull her hand away from Gregory's penis but Gregory kept her hand there, Ray was nervous and scared to scream for help as she feared what Gregory might do to her, Gregory grabbed Ray's arm and led her to the back seat and would not respond to Ray's inquiry about what Gregory was doing, Ray pushed Gregory's head away and told him to stop as he tried to perform oral sex, and Gregory removed her tampon and had intercourse with her. While Gregory testified the sex was consensual, the jury was solely responsible for making credibility determinations. The jury was free to believe Ray's testimony, and based on Ray's testimony, a rational trier of fact could have found the elements of third degree rape beyond a reasonable doubt.[22]

To prove Gregory committed fourth degree assault with sexual motivation, the State had to prove Gregory assaulted another, with the purpose of sexual gratification.[23] Gregory contends the State did not present sufficient evidence of an unwanted touching. As with the evidence relating to the rape charge, the jury heard conflicting testimony about the fourth degree assault charge. From Ray, the jury heard that Gregory grabbed her arm, and when Gregory placed Ray's hand on top of his penis, she tried to pull it away, but Gregory kept Ray's hand there. From Gregory, the jury heard that Ray wanted to fool around with him, and that when he took Ray's hand and

---

[22] Salinas, 119 Wn.2d at 201.

[23] RCW 9A.36.041(2); State v. Mandanas, 163 Wn. App. 712, 719, 262 P.3d 522 (2011) ("An assault may consist of an intentional touching that is harmful or offensive; an act performed with the intent to inflict bodily injury but failing, coupled with the apparent present ability to inflict the injury if not prevented; or an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which creates in another a reasonable apprehension and imminent fear of bodily injury.").

placed it on top of his penis, Ray kept her hand there for at least few minutes. The jury was free to believe Ray's testimony, and based on her testimony, a rational trier of fact could have found the elements of fourth degree assault beyond a reasonable doubt.[24]

## Error in Judgment and Sentence

The court sentenced Gregory to 29 months for the rape conviction and 365 days for the assault conviction. The judgment and sentence form then contains a section titled "Confinement Under RCW 9.94A.507."[25] The court checked the box that sentenced Gregory to a maximum term of life confinement for the rape charge. Gregory argues, and the State concedes, that the court's imposition of the sentence under RCW 9.94A.507 was erroneous. RCW 9.94A.507 allows indeterminate sentencing for certain sex offenses but does not apply to the charge of rape in the third degree. We remand for correction of Gregory's judgment and sentence.

## Statement of Additional Grounds

In Gregory's statement of additional grounds, he asserts his counsel was ineffective for failing to investigate the victim's mental health. The record before us does not allow us to reach this claim. He also asserts counsel was ineffective for failing to object to the testimony by the police detectives, contending the detectives did not read him his Miranda[26] rights, and their testimony should have been suppressed. The record demonstrates Gregory both stipulated to admissibility of the statements he gave to law enforcement, and stipulated that Detective Birkenfeld read Gregory his Miranda rights.

---

[24] Salinas, 119 Wn.2d at 201.

[25] Clerk's Papers at 147.

[26] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Gregory also contends the court erred in allowing the State to "pursue" fourth degree assault with sexual motivation. To the extent Gregory asserts insufficient evidence supports the assault conviction, his argument fails. We cannot discern what other error, if any, Gregory asserts with respect to the fourth degree assault charge. Finally, Gregory asserts it was the victim who pulled out her tampon, rather than him. The jury heard the victim's testimony that Gregory removed her tampon, and the jury was free to accept or reject that testimony.

We affirm Gregory's convictions and remand for correction of his judgment and sentence.

WE CONCUR:

Cox, J.