# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53623-4-II |
| Respondent, | |
| v. | |
| ALEXANDER CARLSON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, A.C.J. — Alexander Carlson appeals his convictions for attempting to elude a pursuing police vehicle and escape from community custody.  Carlson's court appointed counsel on appeal has filed an *Anders*[1] motion, seeking to withdraw as counsel.

Carlson's appellate counsel suggests two potential issues: (1) the evidence was insufficient to convict Carlson of the charged crimes, and (2) Carlson was denied his right to effective assistance of counsel.

We grant counsel's motion to withdraw and dismiss Carlson's appeal.

FACTS

The State charged Carlson by amended information with attempting to elude a pursuing police vehicle and escape from community custody.  The eluding charge included sentence aggravating allegations that Carlson endangered one or more persons other than himself or the

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

pursing deputy and that he was in community custody at the time of the offense. The State alleged that on August 10, 2018, Carlson was seen by a Pierce County Sheriff's deputy driving a car while talking into a cell phone held to his ear. When the deputy attempted to stop him for this infraction, Carlson attempted to elude the deputy by driving recklessly and over the posted 35 mile per hour speed limit. Carlson eventually crashed into a guardrail and then fled on foot to a nearby parking lot where he was taken into custody by another deputy.

At trial, the jury heard testimony from Pierce County Sheriff's Deputies Jonathan Collins, Robert Blumenschine, and Brian Heimann, and from Department of Corrections (DOC) Community Corrections Officer (CCO) Rochelle Warner. Carlson's counsel did not present any defense witnesses.

Collins testified that at about 9:00 am on August 10, 2018, he was on patrol in full deputy uniform and driving northbound on State Route 507 in a "white Chevrolet Silverado crew cab truck. . . . fully marked in Pierce County Sheriff's Department logos, [with] an LED light bar on top and flashing lights within." Verbatim Report of Proceedings (VRP) at 117. Collins saw the driver, later identified as Carlson, driving a Toyota Celica southbound while "holding a cell phone up to their ear." VRP at 114. Collins turned his patrol vehicle around to initiate a traffic stop of the Toyota. After completing the turnaround, but prior to activating his emergency lights, Collins perceived the Toyota increasing its speed of travel. As Collins attempted to overtake the vehicle, he watched it travel through a red light without slowing or stopping at the intersection.

Collins followed the Toyota into Thurston County as it passed other southbound vehicles using the center turn lane as it travelled at an estimated speed of more than 60 miles per hour in a 35 mile per hour zone. Collins observed the Toyota continue to pass cars using the center lane

until it swerved back into the southbound lane and the driver lost control crashing into a guardrail barrier on an overpass near the city of Yelm. Collins, who was driving several hundred yards behind the Toyota when it crashed, testified that he saw only one occupant, a single male in his twenties "wearing a red shirt and dark colored shorts" exit the driver's door and flee the scene and out of sight. VRP at 132.

Collins testified that the Toyota never struck another vehicle during the incident. Collins also testified that the Toyota was registered to a person named "Caleb Miller," it had a damaged ignition, it also had a "trip permit" that "looked to be altered" instead of license plates, but it had not been reported stolen. VRP at 136, 154. Collins testified that Miller was not the driver of the Toyota on the morning of August 10, but admitted that he found nothing in the Toyota to link it directly to Carlson.

Heimann testified that he was on administrative duty driving his personal car when he observed the Toyota crash on SR 507 and the driver flee the vehicle and make his way across a field toward a nearby parking lot. Heimann described the fleeing driver as wearing a faded red shirt, black baggie cargo shorts, and white tennis shoes. Heimann eventually made his way to the parking lot, where he encountered the driver, later identified as Carlson, talking to a couple in a green Honda Accord. Heimann used his car to block in the Honda, drew his gun, and told Carlson to get on the ground. Carlson eventually complied without incident.

Heimann testified that Carlson had a lot of scratches and "was bleeding from [his] hands, arms, face, [and] legs, and was complaining of pain and having bad knees." VRP at 200. After his arrest, Carlson offered his name, "Alex Carlson," to Heimann. VRP at 208.

3

Blumenschine testified that he arrived at the parking lot after Heimann had taken Carlson into custody. Blumenschine testified that he took custody of the individual who stated, "My name is Alexander Carlson. I have a DOC warrant. I'm going to do two years." VRP at 176. Carlson was complaining of head pain. Blumenschine testified that first responders were requested and that Carlson was transported to the hospital, ending his involvement. Blumenschine, however, was unable to identify the defendant in the court room as the same person arrested in the parking lot on August 10, 2018.

Warner testified that her job requires her to "supervise offenders as they [are] release[d] from jail or prison," and that she had been supervising Carlson in that capacity "[o]ff and on for two years." VRP at 161. Warner met with Carlson on July 31, 2018, at her office in Olympia. At that meeting she directed Carlson to return on August 7 before 11:30 am. Warner testified that Carlson failed to appear on August 7, so an arrest warrant was issued. Warner stated that she did not receive any communication from Carlson on August 7 to explain his absence, nor did he appear at her office on August 8 or 9.

The defense accepted the proposed jury instructions without objection. After the instructions were read to the jury, the prosecutor presented closing argument without objection from the defense. During the defense's closing argument, counsel admitted Carlson's failure to attend his scheduled meeting with Warner on August 7, 2018. Carlson's counsel then addressed the eluding charge, arguing that the prosecution had failed to adequately prove the actual identity of the Toyota driver and that the evidence presented implicated the registered owner, Caleb Miller, more than Carlson. Thereafter, the prosecution presented a brief rebuttal without objection.

The jury returned guilty verdicts on both counts and answered "yes" to the aggravating factor alleged as to the eluding charge.

At sentencing, Carlson did not dispute his offender score or the standard range sentences calculated by the prosecution, but he did maintain his innocence as to the charged crimes, claiming he was "somewhere else completely different" on the date of the incidents. VRP at 259. Despite Carlson's innocence claim, the court imposed the high end of the standard range on both convictions, 29 months for the eluding charge plus 12 months and a day for the aggravating circumstance and 90 days for the escape, as recommended by the prosecution for a total sentence length of 41 months plus a day. On July 25, 2019, an order correcting a scrivener's error in the judgment and sentence (a failure to indicate the 90-day sentence ordered for the escape conviction) was entered.

Carlson appeals his conviction and sentence, and his court appointed counsel on appeal moves to withdraw.

ANALYSIS

RAP 15.2(i) provides that court appointed counsel should file a motion to withdraw "[i]f counsel can find no basis for a good faith argument on review." Pursuant to *Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), counsel's motion to withdraw must

> be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

*State v. Theobald*, 78 Wn.2d 184, 185, 470 P.2d 188 (1970) (quoting *Anders*, 386 U.S. at 744); RAP 18.3(a)(2). In accordance with this procedure, Carlson's counsel on appeal filed a brief with

the withdrawal motion. Carlson was served with a copy of the brief and informed of his right to file a statement of additional grounds (SAG). Carlson did not filed a SAG.

The material facts are accurately set forth in the briefing in support of the motion to withdraw. We have reviewed the briefs and the record. We consider the following potential issues raised by counsel:

1. Was the evidence sufficient to convict Mr. Carlson of attempting to elude a pursuing police vehicle and escape from community custody?

2. Was Mr. Carlson denied his right to effective assistance of counsel?

Amended Motion to Withdraw and Brief Referring to Matters in the Record Which Might Arguably Support Review (Amended *Anders* Motion) at 3.

We hold that there is no good faith argument that (1) the evidence was insufficient to convict Carlson of attempting to elude a pursuing police vehicle and escaping from community custody, and (2) Carlson received ineffective assistance of counsel.

## I. SUFFICIENT EVIDENCE

We hold that there is no good faith argument that the evidence was insufficient to convict Carlson of attempting to elude a pursuing police vehicle and escaping from community custody.

We review insufficiency of evidence claims for whether, when viewing the evidence in the light most favorable to the State, could any rational trier of fact have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a challenge to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn therefrom. *Homan*, 181 Wn.2d at 106. We "must defer to the trier of fact on issues of conflicting testimony, credibility of

witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 148 L. Ed. 2d 177 (2004).

## A. ATTEMPTING TO ELUDE PURSUING POLICE VEHICLE

The crime of attempting to elude a police vehicle is defined in RCW 46.61.024(1):

Any driver of a motor vehicle who willfully fails or refuses to *immediately bring his or her vehicle to a stop* and who *drives his or her vehicle in a reckless manner* while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

(Emphasis added.) The jury was instructed that "[t]o operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences." Clerk's Papers (CP) at 20.

The incident took place on a state highway. The driver used the center turn lane as a passing lane in which he exceeded the posted 35 mile per hour speed limit by travelling at an estimate speed exceeding 60 miles per hour. He continued to use the center lane as a passing lane until oncoming traffic caused him to eventually swerve back into the southbound lane, losing control of the car, and ultimately crashing into a guardrail. Deputy Collins observed the driver exit the crashed vehicle, wearing a red shirt and dark shorts. Deputy Heimann arrested the driver in a nearby parking lot. The driver wore a red shirt, dark shorts, was bleeding from his arms, legs, and face, and identified himself as "Alex Carlson." VRP at 208. A jury could conclude that traveling at nearly double the posted speed limit and driving into the oncoming turn lane constituted driving in a reckless manner.

Deputy Collins testified that he pursued Carlson while in his marked police vehicle with his emergency lights flashing. A jury could conclude that the signal was given by a police officer in an appropriate manner corresponding to RCW 46.61.024(1).

The evidence presented at trial permitted a rational trier of fact to conclude beyond a reasonable doubt that the incident constituted an effort to evade the officer. The evidence was sufficient to allow a rational trier of fact to conclude that Carlson was attempting to elude the pursuing deputy.

## B. ESCAPING FROM COMMUNITY CUSTODY

The crime of escaping from community custody is defined in RCW 72.09.310:

> An inmate in community custody who willfully discontinues making himself or herself available to the department for supervision by making his or her whereabouts unknown or by failing to maintain contact with the department as directed by the community corrections officer shall be deemed an escapee and fugitive from justice, and upon conviction shall be guilty of a class C felony under chapter 9A.20 RCW.

Carlson's CCO testified that he failed to attend a scheduled meeting on August 7, 2018. Subsequently, an arrest warrant was issued. A jury could conclude that because Carlson had not been in contact with his CCO for three days, he was escaping from community custody as outlined in RCW 72.09.310.

The evidence presented at trial was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Carlson was escaping from community custody.

## C. CONCLUSION

We hold that there is no good faith argument that the evidence was insufficient to convict Carlson of attempting to elude a pursuing police vehicle and escaping from community custody.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

We hold that there is no good faith argument that Carlson received ineffective assistance of counsel.

We review ineffective assistance of counsel claims de novo. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Ineffective assistance of counsel is a two-prong inquiry. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). To prevail on an ineffective assistance of counsel claim, a defendant must show that defense counsel's performance was deficient, and the deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

There is no ineffective assistance when counsel's complained of actions are trial tactics or go to the theory of the case. *Grier*, 171 Wn.2d at 33. There is a strong presumption that defense counsel's conduct was not deficient. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336.

To be effective, "trial counsel must investigate the case, and investigation includes witness interviews." *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). Counsel's duty includes making reasonable investigations, or making a reasonable decision that renders particular investigations unnecessary. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 355, 325 P.3d 142 (2014). Carlson's counsel proposes that Carlson could argue that "his [trial] counsel's failure to seek a continuance to allow the only proposed defense witness . . . to get to court so he could

9

testify, deprived [Carlson's] right to effective assistance of counsel." Amended *Anders* Motion at 13.

A review of the record does not support an ineffective assistance of counsel claim. Carlson did not filed a SAG directing us to any particular incident that would support this claim. Accordingly, we hold that there is no good faith argument that Carlson received in effective assistance of counsel.

CONCLUSION

Following review of the potential issues raised by counsel, we hold that the issues do not present a good faith argument for review. The record on review does not reveal any potential nonfrivolous issues that may be raised in this appeal. Accordingly, we grant counsel's motion to withdraw and dismiss Carlson's appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, A.C.J.

We concur:

_____
MAXA, J.

_____
CRUSER, J.