# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50530-4-II |
| Respondent, | |
| v. | |
| JAMES RYAN LaFONTAINE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — James Ryan LaFontaine appeals his jury trial conviction for third degree assault.  He argues that he received ineffective assistance of counsel because his trial counsel (1) failed to retain an independent expert to provide testimony in support of a mental health or voluntary intoxication defense and (2) failed to call known witnesses who, he asserts, could have supported his defense.[1]  LaFontaine also argues that because he suffers from a mental health condition, the trial court erred when it imposed certain legal financial obligations (LFOs) without first determining whether he was able to pay under RCW 9.94A.777.  We hold that the ineffective assistance of counsel claims fail and affirm the conviction.  But we remand to the trial court to

---

[1] Although LaFontaine's assignments of error, issue statements, and section headings suggest that he is also arguing that defense counsel provided ineffective assistance of counsel by not presenting a mental health or voluntary intoxication defense, his argument addresses only the failure to investigate these defenses and the failure to call witnesses to support his defense.  We limit our analysis to the issues supported by argument.  *See* RAP 10.3(a)(6); *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

determine whether to impose the $200 criminal filing fee and the $100 deoxyribonucleic acid (DNA) collection fee in light of the 2018 legislative amendments to the LFO statutes and RCW 9.94A.777.

FACTS

I. BACKGROUND

Just before 5:30 AM on March 1, 2017, Hoquiam Police Officer David Peterson was dispatched to a report of a prowler who was "banging on a wall on a house and the door, causing a disturbance." Verbatim Report of Proceedings (VRP) (May 23, 2017) at 13. Officer Peterson arrived at the residence a few seconds after receiving the call and noticed LaFontaine standing at an intersection about a half a block away. Officer Peterson parked his patrol car near LaFontaine and got out of the vehicle so he could talk to LaFontaine. Officer Dennis Luce arrived at approximately the same time.

LaFontaine approached Officer Peterson's patrol car and started kicking it. Officer Peterson moved towards LaFontaine and "asked him what was going on." VRP (May 23, 2017) at 16. According to Officer Peterson, LaFontaine "just kind of started acting irrational." VRP (May 23, 2017) at 16.

Officer Peterson then asked LaFontaine what he was doing, and LaFontaine loudly said, "[A]re you serious right now?" VRP (May 23, 2017) at 16. When Officer Peterson responded, "[E]xcuse me," LaFontaine repeated what he had previously said. VRP (May 23, 2017) at 16. LaFontaine then quickly approached Officer Peterson and said, "[W]ell, I am just out here making some noise" and kicked Officer Peterson in the shin. VRP (May 23, 2017) at 16-17. Officer Peterson and Officer Luce restrained LaFontaine. When Officer Peterson asked LaFontaine why

he had kicked him, LaFontaine "said something like, maybe it has something to do with the rubber band" and then made a strange statement about possibly having a rubber band around his genitals. VRP (May 23, 2017) at 23.

The officers later characterized their encounter with LaFontaine as "strange" and "bizarre." VRP (May 23, 2017) at 22, 33. They also characterized his statements to them as "irrational." VRP (May 23, 2017) at 24, 33.

## II. PROCEDURE

The State charged LaFontaine with third degree assault. LaFontaine pleaded not guilty.

### A. COMPETENCY EVALUATION

Before trial, the State moved for a competency evaluation. The State advised the trial court that the jail had reported "issues" with LaFontaine that raised competency concerns. VRP (Apr. 10, 2017) at 2. The trial court ordered a competency examination.

Forensic psychologist Judith L. Kirkeby, Ph.D. conducted the forensic examination and filed a report with the trial court. Dr. Kirkeby concluded that LaFontaine was competent to stand trial. But Dr. Kirkeby also stated that LaFontaine had an "unspecified psychiatric disorder." Clerk's Papers (CP) at 21.

Dr. Kirkeby's report also contained extensive information about LaFontaine's mental health background and prior drug use. But during the interview, Dr. Kirkeby had "specifically informed [LaFontaine] that [she] did not want him to volunteer any information on the events that led to his charge." CP at 22.

The information in Dr. Kirkeby's report, which was based in part on LaFontaine's self-reporting, suggested that LaFontaine had a history of mental health issues, including one short

3

involuntary hospitalization when he was an adolescent.[2] The report also revealed that LaFontaine had a history of drug and alcohol abuse, although it did not disclose any drug or alcohol use around the time of the assault.

The report also stated that a corrections officer and a nurse from the jail had observed LaFontaine engage in strange behaviors after his arrest, characterizing his behavior as "'off the wall.'" CP at 25. The nurse had opined that when LaFontaine first arrived in the jail, his behavior suggested that he was under the influence of drugs, possibly "bath salts." CP at 25. Both the nurse and the corrections officer stated that LaFontaine's behavior had improved over time, "but he was still 'odd.'" CP at 25. The report also noted that LaFontaine had been living with his mother, that he had no source of income, and that he was receiving food stamps.

After considering Dr. Kirkeby's report, the trial court found that LaFontaine was competent to stand trial. Defense counsel acknowledged having received and reviewed the report and having discussed the report with LaFontaine.

## B. TRIAL

The State's witnesses, Officer Peterson and Officer Luce, testified as described above. LaFontaine did not present any witnesses.

On cross-examination, defense counsel questioned Officers Peterson and Luce about whether they were trained to identify people who were on drugs or who had mental health issues. The officers confirmed that they had such training. The officers also confirmed that LaFontaine's behavior during their encounter had been strange and that some of his statements to them were

---

[2] LaFontaine was 38 years old at the time of Dr. Kirkeby's evaluation.

irrational. On redirect, Officer Peterson agreed that it was "possible" that LaFontaine had been "under the influence" during their encounter. VRP (May 23, 2017) at 25.

Defense counsel did not request a jury instruction on any kind of mental illness or involuntary intoxication defense. Instead, defense counsel argued in closing argument that LaFontaine was either on drugs or had mental health issues and, therefore, had not acted with the intent required to convict him. The jury found LaFontaine guilty of third degree assault.

### C. SENTENCING

In a sentencing memorandum to the court, defense counsel noted that "LaFontaine was acting in a 'bizarre' manner during the course of the incident," that he had been evaluated by Western State at the start of these proceedings, and that the evaluation referred to a "history of 'unspecified psychotic disorder.'" CP at 63-64. Defense counsel further stated that "[a]fter extended discussions regarding his case and the process and procedure of a jury trial, Mr. LaFontaine advised [defense counsel] that he desired a jury trial. Consequently, [defense counsel] proceeded to jury trial according to Mr. LaFontaine's desires including no references to being 'crazy.'" CP at 64.

At the sentencing hearing, the trial court inquired about LaFontaine's employment status. LaFontaine responded that the last time he had been employed was eight or nine years earlier. He explained that he had been unemployed because of "[l]ack of housing" and his drug and alcohol use. VRP (June 5, 2017) at 6. But he asserted that he was now beyond that and had "a little bit of work lined up" after his release. VRP (June 5, 2017) at 6. Without inquiring further, the trial court stated that it would impose only mandatory LFOs.

LaFontaine's judgment and sentence does not contain any finding regarding LaFontaine's current or future ability to pay restitution and LFOs. But the judgment and sentence includes the following LFOs: (1) a $100 DNA collection fee, (2) a $500 victim assessment, and (3) a $200 criminal filing fee. The judgment and sentence shows that LaFontaine had a prior felony conviction for unlawful possession of methamphetamine and 23 prior misdemeanor and gross misdemeanor convictions.

LaFontaine appeals his conviction and the imposition of the DNA collection fee and criminal filing fee. The trial court entered an order of indigency for purposes of appeal.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

LaFontaine first argues that he received ineffective assistance of counsel because defense counsel (1) failed to retain an independent mental health expert to support a mental health or voluntary intoxication defense and (2) failed to call Dr. Kirkeby or the corrections officer and nurse from the jail as witnesses. These arguments fail.

### A. LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). In order to show that he received ineffective assistance of counsel, LaFontaine must show that "based on the record developed in the trial court," (1) defense counsel's conduct was deficient and (2) the deficient performance was prejudicial. *State v. McFarland*, 127 Wn.2d 322, 335, 337, 899 P.2d 1251 (1995); *see also State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018); *Grier*, 171 Wn.2d at 32-31.

"The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." *Grier*, 171 Wn.2d at 33. "'When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). If the trial court record contains no evidence of counsel's strategic or tactical decisions, we may conclude that LaFontaine has failed to overcome his burden of establishing deficient performance. *Linville*, 191 Wn.2d at 525.

### B. FAILURE TO RETAIN AN INDEPENDENT EXPERT

LaFontaine argues that he received ineffective assistance of counsel because defense counsel failed to retain an independent expert to support a mental health or voluntary intoxication defense. This argument fails.

The record here does not disclose whether defense counsel retained or considered retaining an independent mental health expert to support a mental health or voluntary intoxication defense. LaFontaine himself admits that "[t]he record is *unclear* whether or not counsel ever retained an independent expert." Br. of Appellant at 9-10 (emphasis added). He suggests that the fact there is nothing in the record showing that defense counsel requested funds for an independent expert, the fact defense counsel did not call any witnesses, and the fact there was little time to conduct an independent mental health review makes it unlikely defense counsel investigated obtaining an independent mental health expert. It is, however, LaFontaine's burden to affirmatively demonstrate that based on the trial court record, defense counsel failed to retain an independent

expert. The mere suggestion that defense counsel might not have done so is not sufficient to establish ineffective assistance of counsel.[3]

Furthermore, without additional information it is also impossible to examine whether failing to retain an independent expert was prejudicial. To establish prejudice, LaFontaine must point to facts in the record that would demonstrate that the outcome of the case would have been different. In this instance, a statement or report from an independent expert containing information relevant to LaFontaine's mental health or drug use status at the time of the offense is necessary to evaluate the possible prejudice, and no such statement or report is in the record before us. Accordingly, this ineffective assistance of counsel claim fails.[4]

## C. FAILURE TO PRESENT WITNESSES

LaFontaine next argues that he received ineffective assistance of counsel because defense counsel failed to call the corrections officer and nurse referred to in Dr. Kirkeby's report or Dr. Kirkeby. He contends that these witnesses could have provided testimony that would have supported the defense theory that he (LaFontaine) was unable to form the requisite intent to commit the assault due to his "mental illness and symptoms." Br. of Appellant at 10. This argument fails.

---

[3] We note that information in defense counsel's sentencing memorandum also suggests that LaFontaine did not want to pursue, and perhaps declined to participate in presenting, a mental health defense, as defense counsel mentions that he proceeded to trial "according to Mr. LaFontaine's desires including no references to being 'crazy.'" CP at 64; *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 894, 952 P.2d 116 (1998) ("No ineffective assistance claim can be made if the defendant preempts counsel's trial strategy.").

[4] If LaFontaine has or obtains access to information outside the record that would support this claim, the proper way to present this evidence is through a personal restraint petition. *McFarland*, 127 Wn.2d at 338.

The decision to call a witness is generally a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel. *State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981). To constitute ineffective assistance, the failure to call certain witnesses must have been unreasonable and must result in prejudice or create a reasonable probability that had counsel presented the witnesses the outcome of the trial would have been different. *State v. Sherwood*, 71 Wn. App. 481, 484, 860 P.2d 407 (1993). If the trial court record contains no evidence of counsel's strategic or tactical decisions, we may conclude that LaFontaine has failed to overcome his burden of establishing deficient performance. *Linville*, 191 Wn.2d at 525.

Based on Dr. Kirkeby's description of the correction officer's and nurse's encounters with LaFontaine, it appears that the corrections officer and nurse could have testified that LaFontaine exhibited strange behavior soon after his arrest and that the nurse believed that this strange behavior could have been drug induced. But the record contains no evidence of counsel's strategic or tactical decisions. Thus, La Fontaine fails to establish counsel's performance was deficient.

Next we consider whether Dr. Kirkeby's testimony would have assisted LaFontaine. It is unlikely that Dr. Kirkeby's report would have been directly relevant to LaFontaine's state of mind at the time of the assault because LaFontaine was directed to not provide information about the events that led to his charge. But the information Dr. Kirkeby had about LaFontaine's mental health history, assuming it was admissible, could have been relevant to show that he had mental health issues.

However, this alone is not sufficient to show that defense counsel's failure to call Dr. Kirkeby was an unreasonable trial tactic because other information Dr. Kirkeby could have provided may have undermined LaFontaine's defense. For instance, nothing in Dr. Kirkeby's report suggested that LaFontaine's mental health issues impaired him to the degree he was incapable of forming intent. And other information in the report showed that LaFontaine had not reported engaging in recent drug use and suggested that he may have last used drugs approximately six months before the assault. The report also suggested that despite having mental health issues and exhibiting some strange speech patterns and behaviors, he "presented as cognitively intact" during an interview with a mental health professional that took place within two weeks of the assault. CP at 24.

Given that some of the information that Dr. Kirkeby had could have provided undermined LaFontaine's defense, we cannot say that defense counsel's failure to call Dr. Kirkeby as a witness was not a reasonable trial tactic. Accordingly, this ineffective assistance of counsel claim also fails.

## II. LFOs

Finally, LaFontaine argues that because he suffers from a mental health condition, the trial court erred when it imposed the $100 DNA collection fee and the $200 criminal filing fee without first determining whether he was able to pay under RCW 9.94A.777. We exercise our discretion to reach this issue, and we remand for the trial court to reconsider whether to impose the DNA collection fee and the criminal filing fee under RCW 9.94A.777.

RCW 9.94A.777[5] requires a trial court to determine whether a defendant has the means to pay any LFOs other than the victim penalty assessment if that defendant has a mental health condition that prevents him from participating in gainful employment. LaFontaine was diagnosed with a mental disorder by Dr. Kirkeby. But the trial court made only a cursory examination into LaFontaine's ability to participate in gainful employment. The record shows that LaFontaine was living with his mother and receiving food stamps and that he had a long history of unemployment, which suggests that he had few financial resources.

Although LaFontaine told the trial court that he had "a little bit of work lined up" after his release, the trial court did not inquire as to what this job was, the duration of the job, or what the job paid. VRP (June 5, 2017) at 6. Without additional information about this potential job, the trial court had no information upon which to determine whether LaFontaine had the means to pay the DNA collection fee or the criminal filing fee. Thus, the trial court erred when it did not fully examine LaFontaine's means to pay the DNA collection fee and the criminal filing fee and remand for application of RCW 9.94A.777 is required.

---

[5] RCW 9.94A.777 provides,

> (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge *must* first determine that the defendant, under the terms of this section, has the means to pay such additional sums.
>  (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.

(Emphasis added). This legislature did not amend this statute in 2018.

Furthermore, it is unclear whether the DNA collection fee and criminal filing fee can be imposed under the 2018 legislative amendments to the LFO statutes regardless of RCW 9.94A.777. LAWS OF 2018, ch. 269, §§ 17, 18. Our Supreme Court has recently held that the 2018 legislative amendments to the LFO statutes apply prospectively to cases pending on appeal. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

The 2018 amendments prohibit the imposition of the criminal filing fee on defendants found indigent under RCW 10.101.010(3)(a) through (c). RCW 10.101.010(3) provides, in part,

> "Indigent" means a person who, at any stage of a court proceeding, is:
> (a) Receiving one of the following types of public assistance: Temporary assistance for needy families, aged, blind, or disabled assistance benefits, medical care services under RCW 74.09.035, pregnant women assistance benefits, poverty-related veterans' benefits, *food stamps or food stamp benefits transferred electronically*, refugee resettlement benefits, medicaid, or supplemental security income; or
> (b) Involuntarily committed to a public mental health facility; or
> (c) *Receiving an annual income, after taxes, of one hundred twenty-five percent or less of the current federally established poverty level*; or
> (d) Unable to pay the anticipated cost of counsel for the matter before the court because his or her available funds are insufficient to pay any amount for the retention of counsel.

(Emphasis added.) Although the trial court found LaFontaine indigent, the record does not reveal if he was found indigent under RCW 10.101.010(3)(a) through (c). The trial court could have found him indigent under subsection (3)(d). Thus, remand to determine whether the criminal filing fee can be imposed under the 2018 amendments is required.

The 2018 amendments also prohibit the imposition of the DNA collection fee if LaFontaine's DNA has already been collected as the result of a prior conviction. RCW 36.18.020(2)(h); RCW 43.43.7541. LaFontaine has a prior felony conviction, but the record does

not reveal whether the DNA has already been collected.  Thus, remand for the trial court to determine whether it can impose the DNA collection fee under the 2018 amendments is required.

Accordingly, we affirm the conviction, but we remand to the trial court to determine whether to impose the $200 criminal filing fee and the $100 DNA collection fee in light of the 2018 legislative amendments to the LFO statutes and RCW 9.94A.777.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, C.J.

LEE, J.