

**FILED**
**JULY 16, 2024**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39029-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID PAUL BLOYED, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — David Paul Bloyed appeals his conviction for first degree assault. We affirm.

## FACTS

David Bloyed lived in Spokane, along with his girlfriend, Jennifer Hamilton. Next door to their residence was a fourplex apartment building. One of the fourplex's tenants was a woman named Tiffany. On May 11, 2021, Tiffany's stepfather, Steven Singh, was living in Tiffany's apartment and helping take care of her children.

A fence separated the Mr. Bloyed's property from the back area of the fourplex. Several slats were missing from the fence. The back area of the fourplex was described as either a yard or a parking area. Photos indicate that the fourplex's back area was an unpaved lot and a few cars were parked on the lot, directly behind the fourplex.

There is no indication that this back area was generally open to the public. There was evidence that the children who lived at the fourplex used the back area for playing. The children would also sometimes cross onto Mr. Bloyed's property by passing through the missing slats in the fence. There was no indication that individuals from Mr. Bloyed's property customarily used the gap in the fence to access the fourplex.

Mr. Singh's ex-wife lived a few buildings down from the fourplex. In January 2021, a protection order was issued prohibiting Mr. Singh from coming within 1,000 feet of his ex-wife's residence. There is no evidence in the record showing the fourplex was less than 1,000 feet from the residence of Mr. Singh's ex-wife.[1] According to a proffer by the State, Mr. Singh's ex-wife was aware that Mr. Singh was living with Tiffany and she thought the fourplex fell outside the 1,000-foot restriction zone.

On the evening of May 11, 2021, Mr. Singh and several other individuals were in the fourplex's back area, shooting at cans using slingshots. Ms. Hamilton yelled for them to stop. Mr. Singh stopped and went over to the fence. Mr. Singh and Ms. Hamilton began arguing, and the conversation soon became heated. Mr. Singh called Ms. Hamilton a profanity.

---

[1] Mr. Singh was arrested for violating the protection order and, according to defense counsel, later entered a plea. But, at the time of the arrest, Mr. Singh was not located at the fourplex. Instead, he was hiding two blocks away.

Meanwhile, Mr. Bloyed arrived home from work. Ms. Hamilton told Mr. Bloyed what had transpired with Mr. Singh. The pair then went to the back area of the fourplex, utilizing the gap in the fence. Mr. Bloyed was carrying a concealed pistol pursuant to a lawful permit.

According to Mr. Bloyed, he approached Mr. Singh and asked, "'What's up?'" 1 RP (May 10, 2022) at 290, 305-06; *see id*. at 154. A verbal confrontation ensued, with some of the details disputed. According to Mr. Bloyed, Ms. Hamilton slapped Mr. Singh's arm. Mr. Singh claimed Mr. Bloyed then "shoulder check[ed]" him. *Id*. at 215. It is undisputed that, at some point, Mr. Singh punched Mr. Bloyed on the left side of the head, causing a cut behind Mr. Bloyed's ear.

After being punched, Mr. Bloyed staggered back and drew his pistol. At trial, Mr. Bloyed claimed Mr. Singh then "came at [him]," while Mr. Bloyed warned him to back away. *Id*. at 293. Both Mr. Singh and Ms. Hamilton testified that Mr. Singh retreated as soon as he saw the pistol.

Mr. Bloyed fired a shot at Mr. Singh, hitting him in the chest and puncturing a lung. Mr. Singh was not mortally wounded and ran off. According to Mr. Bloyed, the entire incident, from when he entered the fourplex's back area until the shooting, lasted less than fifteen seconds.

3

After the shooting, Mr. Bloyed and Ms. Hamilton returned home and Mr. Bloyed

called 911. When police arrived, Mr. Bloyed was taken into custody and gave a statement.

Police found Mr. Singh hiding under a truck, near the house of his ex-wife. He was

taken to the hospital and was also informed he was under arrest for a probation violation

warrant. The State subsequently charged Mr. Singh with a protection order violation

pertaining to his ex-wife. Mr. Singh's injuries from the shooting have had lingering

effects, including shortness of breath.

PROCEDURE

Mr. Bloyed was charged by information with first degree assault in violation of

RCW 9A.36.011(1)(a). He exercised his right to a jury trial.

Before trial, the court addressed several motions in limine. One issue was

the admissibility of evidence pertaining to the protection order that had been issued

against Mr. Singh. According to defense counsel, Mr. Singh was in violation of the

order at the time of the shooting and evidence of the order was relevant to explain why

Mr. Singh ran away and hid. The State pointed out that Mr. Singh's behavior could be

adequately explained by the fact that he had a pending warrant at the time of the shooting.

The State also proffered that both Mr. Singh and his ex-wife believed the fourplex was

more than 1,000 feet away from the ex-wife's residence; thus, Mr. Singh may not have

4

believed he was in violation of the order. The trial court expressed reluctance over having

a "minitrial" regarding the protection order. 1 RP (May 9, 2022) at 31. The court agreed

with the State that Mr. Singh could be asked about the existence of an arrest warrant.

But, the court indicated it was going to "reserve" on "much" of the admissibility of

allegations regarding Mr. Singh's alleged criminal conduct, noting "[w]e might have to

have Mr. Singh here to testify." *Id*. at 34. Defense counsel never asked the court to revisit

admissibility of evidence about the protection order.

At the jury instructions conference during trial, the court took up the issue of

whether to grant Mr. Bloyed's request for a "no duty to retreat" instruction pursuant to

WPIC 17.05.[2] The trial court expressed concern over the instruction, noting "I don't

know that it necessarily applies here." 1 RP (May 10, 2022) at 314-15. The court

ultimately indicated it was leaning against providing the instruction, stating, "I think that

allows the [S]tate to argue [Mr. Bloyed] shouldn't have gone over and that he should have

left. But I also think it gives [defense counsel] the chance to argue, 'This happened so

quickly he didn't have the time to do anything.'" *Id*. at 321.

---

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.05, at 294-95 (5th ed. 2021).

The court's final instructions included an instruction on self-defense, but there was not an instruction regarding no duty to retreat. When asked if there were any objections to the court's instructions, defense counsel stated there were not.

During summation, both the State and Mr. Bloyed argued the applicability of self-defense. The State argued that, under the court's instructions, a defendant acting in self-defense may use force against another "when the force is not more than is necessary." Clerk's Papers (CP) at 146; 1 RP (May 11, 2022) at 351. According to the State, self-defense was inapplicable under the facts of this case because Mr. Bloyed's use of force was unreasonable, particularly in light of the fact that Mr. Bloyed had intruded into the fourplex's back area. The defense did not object to the State's argument. The defense argued Mr. Bloyed had been acting in defense of himself and Ms. Hamilton. According to the defense, the State had not met its burden of disproving self-defense. Defense counsel never addressed the State's argument that Mr. Bloyed's use of force was excessive.

The jury found Mr. Bloyed guilty of first degree assault. He was sentenced below the standard range to a term of 48 months in prison and three years of community custody. Mr. Bloyed has filed a timely appeal.

ANALYSIS

Mr. Bloyed makes three substantive arguments on appeal: (1) the trial court erroneously excluded evidence of Mr. Singh's protection order, (2) the trial court improperly failed to provide a "no duty to retreat" instruction, and (3) the prosecutor committed misconduct during summation by arguing that Mr. Singh had a right to be in back area of the fourplex, but Mr. Bloyed did not. None of these three claims of error were preserved in the trial court and therefore fail.

*Exclusion of evidence of protection order violation*

Mr. Bloyed asserts he was limited in presenting a viable self-defense argument because the trial court erroneously excluded evidence regarding Mr. Singh's protection order. According to Mr. Bloyed, the order showed Mr. Singh was prohibited from living at his stepdaughter's apartment because it was less than 1,000 feet from his ex-wife's residence. Mr. Bloyed reasons that if Mr. Singh was prohibited from living at the fourplex, he had no expectation of privacy and security in the back area of the fourplex that could have been violated by Mr. Bloyed.

Mr. Bloyed's complaints about the court's failure to admit evidence of the protection order have not been preserved. Before trial, the court reserved ruling on the admissibility of the protection order. Yet Mr. Bloyed never attempted to introduce

evidence of the protection order during trial. In addition, Mr. Bloyed never argued the protection order was relevant to show Mr. Singh did not have an expectation of privacy or security in the back area of the fourplex. The record fails to clarify whether the protection order barred Mr. Singh from living at the fourplex or whether, prior to his arrest, Mr. Singh was aware that he could not live at the fourplex. In addition, Mr. Bloyed has not cited any legal authority—either at trial or on appeal—indicating that the existence of the protection order meant that Mr. Singh had some sort of diminished right to be free from assault.

Mr. Bloyed has not presented any argument about why we should review his unpreserved arguments regarding the protection order. The State raised the issue of error preservation in its responsive brief, yet Mr. Bloyed did not file a reply brief. We will not speculate as to why Mr. Bloyed might think his arguments regarding the protection order should be reviewed despite the lack of error preservation. Instead, we decline further review. *See* RAP 2.5(a).

*No duty to retreat instruction*

Mr. Bloyed argues the trial court deprived him of the right to present a defense when it declined to issue a no duty to retreat instruction. Again, this issue was not preserved. But Mr. Bloyed claims he should not be barred from relief because counsel's

8

failure to object to the exclusion of the instruction constituted ineffective assistance of counsel.

To prevail in an ineffective assistance claim, the defendant must show (1) trial counsel's performance was objectively deficient, and (2) that counsel's unprofessional errors prejudiced the defendant. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Both elements are required. *See id*. at 335.

Whether counsel performed deficiently by failing to object to the court's instructions turns on whether Mr. Bloyed was entitled to a no duty to retreat instruction. *See In re Pers. Restraint of Cross*, 180 Wn.2d 664, 718, 327 P.3d 660 (2014). A person acting in self-defense has "no duty to retreat" if they are "assaulted in a place where [they have] a right to be." *In re Pers. Restraint of Harvey*, 3 Wn. App. 2d 204, 215, 415 P.3d 253 (2018). The right to stand one's ground is clear when an individual is assaulted in their home or at a public place. *Id*. at 215-16. But the issue is more complex when one is on another's private property. In such circumstances, the right to stand one's ground turns on whether the individual has been given a license or privilege to enter the property. A license or privilege can be express, or implied "through conduct or by application of local custom." *Id*. at 216.

Here, there was no evidence Mr. Bloyed was invited onto the back area of the

fourplex at the time of the assault. Nor was there any evidence of a custom, whereby

Mr. Bloyed or Ms. Hamilton would access the fourplex property uninvited by traveling

through the gap in the fence. While children were known to use the gap to cross from the

fourplex onto Mr. Bloyed's property and driveway, there was no indication that this

conduct was reciprocated. Mr. Bloyed testified that he was familiar with the kids who

would come onto his property and that he had "no problem going over there and talking

to them." 1 RP (May 10, 2022) at 305. But, he did not clarify how he would go over there

or whether his visits to the neighboring property were invited.

Because there was no evidence that Mr. Bloyed had express or implied consent

to enter the back area of the fourplex, the evidence did not support a no duty to retreat

instruction. *Harvey*, 3 Wn. App. 2d at 219. Counsel's failure to object to the exclusion

of a no duty to retreat instruction was therefore not ineffective.

*Prosecutorial misconduct*

Mr. Bloyed contends the State committed prosecutorial misconduct during

summation by mischaracterizing the facts and law. The defense did not object to the

prosecutor's arguments. Thus, relief turns on whether the prosecutor engaged in

misconduct so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

Mr. Bloyed claims the prosecutor misrepresented the facts by arguing Mr. Singh lived at the fourplex. We disagree. The uncontested evidence was that Mr. Singh lived at the fourplex with his stepdaughter, Tiffany. Mr. Bloyed argues Mr. Singh was not entitled to live at the fourplex because it was located within the 1,000-foot zone specified in his protection order. But, as noted above, Mr. Bloyed's arguments regarding whether the protection order prohibited Mr. Singh from residing at the fourplex have not been developed in the record. And even if they were, the uncontested fact remains that Mr. Singh was living at the fourplex, regardless of whether this living situation may have violated the terms of the protection order. Furthermore, Mr. Singh had the right to be free from assault, regardless of whether his choice of residence violated the terms of any protection order.

Mr. Bloyed also argues the prosecutor committed misconduct by suggesting Mr. Bloyed should have left the back area of the fourplex instead of using force. We disagree. Given the inapplicability of a no duty to retreat instruction, the State was entitled to argue that Mr. Bloyed should have left the area. Nevertheless, the State never actually argued Mr. Bloyed had an unconditional duty to retreat. The State repeatedly

argued Mr. Bloyed could have lawfully responded to Mr. Singh's assault by using his "fists" or "punch[ing] back." 1 RP (May 11, 2022) at 355-56, 359-60. The State's argument was simply that Mr. Bloyed was not entitled to pull out his gun and shoot because "[t]hat's way beyond reasonable force." *Id*. at 356. According to the State, Mr. Bloyed's options were either to defend himself using the same kind of force deployed by Mr. Singh or walking away. *Id*. at 360.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Staab, J.

12