IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　　　v.<br><br>DUSTAN LEE GOAD, AKA DUSTIN LEE GOAD, NICHOLAS KEITH JOHNSON,<br><br>　　　　　　　　Appellant. | No. 87952-9-I<br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — Dustan Lee Goad appeals his judgment and sentence for second degree trafficking in stolen property. He argues the prosecutor committed misconduct in closing argument by commenting on his right to pre-arrest silence. He also argues the trial court erred by violating his Sixth Amendment[1] right to have a jury determine whether he was on community custody when he committed the crime before increasing his offender score by one point. Because Goad fails to show his prosecutorial misconduct claim amounts to manifest constitutional error and the trial court did not add one point to his offender score under RCW 9.94A.525(19), we affirm Goad's judgment and sentence.

---

[1] U.S. CONST. amend. VI.

FACTS

On November 25, 2022, someone stole Larry Evans' rental car from a Walmart parking lot. Several of Evans' personal items were in the car, including tools, cameras, clothes, and cell phones. His girlfriend's purse was also in the car. Evans used the "find my phone" application to track one of his stolen phones and found it at a pawn shop in Puyallup. He then called the pawn shop to warn it that someone there might be trying to pawn his property.

Evans, his girlfriend Jasmine Sims, and another person then went to the pawn shop. When they arrived, Evans tracked his stolen phone to a white, midsized car in the parking lot. Evans and Sims approached the car. There was no one in the driver's seat but there was a female in the passenger seat. Evans and Sims saw some of their property on the backseat of the car, so they opened the door, and Evans took out one of his bags and Sims took her purse. Goad then ran out of the pawn shop, grabbed the bag from Evans, got in the white car, and drove off quickly. Evans later got back one stolen camera and a wrench from the pawn shop.

On February 15, 2023, the State charged Goad with first degree trafficking in stolen property under RCW 9A.82.050(1). In January 2025, the case went to a jury trial. During closing argument, the State argued that circumstantial evidence showed Goad knew the items he possessed were stolen. The prosecutor stated:

> We also have other circumstantial evidence and probably the biggest was Mr. Goad running away . . . [when] Mr. Evans . . . came onto the scene. . . .
>   . . . The defendant just gets into his car and rolls out, peels out. . . . He . . . just wants to get out of there because he knows[,] using the circumstantial evidence, that those items were stolen. . . .

2

. . . [Y]ou have to ask yourself why wasn't this confrontation longer?  Why didn't he go back into the shop?  Why didn't he call the police?  Those are things you can consider as you move forward.

Defense counsel responded:

The other main thing the State has said, I would characterize it as circumstantial evidence of [Goad's] knowledge that the property is stolen, is that [Goad], when confronted by the actual owner of the property, . . . he ran away.  He didn't stick around for the police. *He didn't give them his side of the story*.  He acted like what a criminal would do.  They'd run away and he never came back and asked about the stuff.[2]

During the State's rebuttal argument, the prosecutor said, "[Defense counsel] explicitly talked about how there [are] no statements from Mr. Goad.  And you have to ask yourself why that is.  He Ran.  Mr. Evans stayed for hours.  That explains that, right?"

The jury acquitted Goad of first degree trafficking in stolen property but convicted him of the lesser included crime of second degree trafficking in stolen property.  At sentencing, Goad stipulated to his prior convictions and an offender score of 11.5.  Based on the stipulation, the trial court found that Goad had an offender score of "9+" and sentenced him to 51 months' imprisonment, the low end of the standard range.

Goad appeals.

---

[2] (Emphasis added.)  Defense counsel asserted, "But that's not . . . what happened in this case."  He argued Goad's reaction was reasonable under the circumstances because he saw "[p]eople he doesn't know opening his car door and doing who knows what," with his "loved one" in the passenger seat.  So, he fled out of fear and for his and his passenger's safety.

ANALYSIS

Goad argues the prosecutor committed misconduct in closing argument. He also argues the trial court violated his Sixth Amendment right when it added one point to his offender score without having a jury determine whether he was on community custody when he committed the current crime. We address each argument in turn.

1. Prosecutorial Misconduct

Goad argues the prosecutor committed misconduct in closing argument by improperly commenting on his constitutional right to pre-arrest silence. The State argues the issue is not reviewable because Goad did not object below and fails to show manifest constitutional error. We agree with the State.

Generally, we will not consider an issue raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). To show manifest constitutional error, the defendant must "identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights." *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). "RAP 2.5(a)(3) is not intended to afford criminal defendants a means for obtaining new trials whenever they can identify some constitutional issue not raised before the trial court." *Id*. It is the showing of actual prejudice that makes the error "manifest" and allows for appellate review. *Id.* If we conclude there is a manifest constitutional error, we then engage in a harmless error analysis. *State v. Harris*, 154 Wn. App. 87, 94, 224 P.3d 830 (2010).

Here, in rebuttal, the prosecutor responded to defense counsel's statement in closing argument that Goad "didn't give [the police] his side of the story." The prosecutor stated that defense counsel "explicitly talked about how" Goad made "no statements" to the police. The prosecutor then said, "And you have to ask yourself why that is. He Ran. Mr. Evans stayed for hours. That explains that, right?"

Goad challenges the prosecutor's statement for the first time on appeal but fails to show that it amounts to manifest constitutional error. While he broadly claims that "comments regarding a [defendant's] silence pose an exception to the rule that issues may not be raised for the first time on appeal," he identifies no actual prejudice from the prosecutor's comments.[3] Indeed, this is particularly true where defense counsel was the first to comment on Goad's failure to "give [the police] his side of the story."

For these reasons, Goad does not show manifest constitutional error, and we do not review the issue.[4]

---

[3] Goad cites two cases in which we determined that allegations of Fifth Amendment violations amounted to manifest constitutional error. *See State v. Curtis*, 110 Wn. App. 6, 10-11, 37 P.3d 1274 (2002); *State v. Holmes*, 122 Wn. App. 438, 443, 445-46, 93 P.3d 212 (2004); *see also* U.S. CONST. amend. V. But these cases do not hold that every allegation of a Fifth Amendment violation amounts to manifest constitutional error. Each defendant must show how they were actually prejudiced by the error. *McFarland*, 127 Wn.2d at 333.

[4] Even if we chose to consider the issue under RAP 2.5(a)(3), Goad waived his prosecutorial misconduct claim by failing to object during the State's closing argument or show that an instruction could not have cured the resulting prejudice. *See State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012) ("If the defendant did not object at trial, the defendant is deemed to have waived any error" unless he shows the misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.").

2. Sixth Amendment Challenge

Goad also argues the trial court violated his Sixth Amendment right to a jury by finding he was on community custody at the time of his offense and adding one point to his offender score. We disagree.

Under RCW 9.94A.525(19), the sentencing court adds one point to a defendant's offender score if he was on community custody when he committed the current offense. Citing *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024), Goad argues that whether he was on community custody at the time of the offense is a factual finding that could increase his sentence, so a jury must make that determination, not the court. But the record does not support his argument, and any error would be harmless.

Here, the record shows the sentencing court did not add one point to Goad's offender score under RCW 9.94A.525(19). Indeed, the parties' stipulation to Goad's offender score included a provision asking whether "[t]he defendant committed a current offense while on community custody" under RCW 9.94A.525. And the parties stipulated, "No." The court relied on that stipulation when it calculated Goad's offender score in his judgment and sentence.

In any event, assuming that Goad's legal argument is correct and that the court added a point to his offender score because Goad was on community custody at the time of the offense, any error would be harmless, as it did not impact his standard sentencing range.

Goad stipulated to an offender score of 11.5, which resulted in the maximum offender score of 9+. *See* RCW 9.94A.525 (the offender score is

measured on the horizontal axis of the sentencing grid), .510 (sentencing grid caps an offender score at "9 or more"). So, even if we remanded for the sentencing court to subtract one point based on the lack of a jury finding under RCW 9.94A.525(19), Goad would still have an offender score of 9+ and the same standard sentencing range of 51 to 60 months. Because a recalculated offender score does not impact Goad's standard range and the trial court sentenced him to the bottom of the range, any error was harmless. *State v. Royal*, 26 Wn. App. 2d 812, 819-20, 530 P.3d 573 (2023) ("[A] recalculated offender score that does not affect a defendant's standard range is harmless unless the trial court conveyed a desire to impose a sentence at the low end of the standard range.").

We affirm Goad's judgment and sentence.

_____, ACJ

WE CONCUR:

_Feldman, J._ _____     _Mann, J._ _____